Sanders v. Lacks.

---

SANDERS, *Appellant*, v. LACKS.

Division One, December 23, 1897.

142   255<br>e155   83

1. **Appellate Jurisdiction**: ELECTIONS.    The Supreme Court is the
proper appellate court in election contests involving title to office.

2. **Election Contest**: PLEADING: ANSWER: WAIVER.    Where contest-
ant went to trial without objection in an election contest without any
answer having been filed, he will be deemed to have waived the right
to the formal pleading.

3. ———: OATH OF JUDGES.    The mere failure of a judge of election to
take an oath before he enters upon the discharge of his duties, does
not invalidate the votes at his precinct.

4. ———: IRREGULARITIES OF ELECTION OFFICERS.    No voter should be
disfranchised on account of a mere irregularity occasioned by the
neglect or misconduct of election officers, over whose conduct he has
no control, unless the legislature has declared such irregularity fatal.

5. ———: NUMBER OF JUDGES.    The law governing the election required
six judges at the precinct in contest.    Prior to the Australian Ballot
Act only four were required.    Six judges were appointed, but only
three appeared at the polls to conduct the election, and the by-stand-
ers elected one more, and there was some discussion among the voters
present as to the number of judges required by law.    No proof was
offered nor allegation made that any fraud was practiced on the voters
by the judges.    *Held*, that the votes were not illegal.    *Held*, also,
that unless the legislature makes certain requirements or technical
observances essential to a legal election, the courts will not nullify
the vote honestly cast and counted because of irregularities in cer-
tain details which are by statute required but not by statute made
essential.

6. ———: JUDGES: THREE DEMOCRATS, ONE REPUBLICAN. As the full vote of the precinct was polled, counted and returned, and as the county court had appointed three Democrats and three Republicans judges of the election, the fact that two Democrats and one Republican appeared, and the by-standers elected another Democrat, and these four conducted the election, does not nullify the vote at that precinct.

7. ———: ELECTION OF JUDGES. No special form of procedure for the election of substitute judges in place of those absent at the time the polls open, is required by statute. If a sufficient number of voters present at the time, by common consent designate some qualified person to act as judge, the requirement of the statute has been met.

*Appeal from Butler Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

*A. D. Hight, J. T. Davison* and *George D. Tinch* for appellant.

(1) The basis of this suit is the failure of the judges who were appointed by the county court to hold the election on November 3, 1896, at Fitzgerald voting precinct, to act, and the fact that the election was held by four judges instead of six as the statutes require, and that of these four but two were duly appointed by the county court, the other two acting without the authority of appointment or election by the voters present, as the statutes provide. There is but little or no contention as to the evidence and facts surrounding the case. R. S. 1889, secs. 4673, 4777 and 4791; 1 Bl. Com. 87. (2) This case involves the construction to be placed on sections 4673 and 4777 of the Revised Statutes of 1889. Section 4777, page 30, "Election Laws of the State of Missouri," as compiled by Secretary of State, 1896. See *Talbert v. Philbrick*, 59 Conn. 472; 6 Am. and Eng. Ency. of Law, p. 348, sec. 8; *Ledbetter v. Hall*, 62 Mo. 422; *State ex rel. v. Cook*, 41 Mo. 593;

*Rhodes v. Smetherst*, 4 M. & W. 63; *West v. Ross*, 53 Mo. 350; *Gumm v. Hubbard*, 97 Mo. 311.

*W. N. Barron* and *E. R. Lentz* for respondent.

(1) The notice of contest contains no allegation that the contestant was injured in any manner by the irregularities complained of, or that the result was in any manner different from what it would have been had the election been conducted in an entirely formal manner. Nor is there any evidence tending to sustain such allegations if made, hence the trial court properly found for the contestee. *Whipley v. McCune*, 12 Cal. 361; *Taylor v. Taylor*, 10 Minn. 107; *Hope v. Flentge*, 140 Mo. 390. (2) The provisions of a statute governing the conduct of election officers are *per se* mandatory only where the legislature has declared that a departure from the prescribed methods shall vitiate the election. *West v. Ross*, 53 Mo. 351; *Zeiler v. Chapman*, 54 Mo. 502; *Ledbetter v. Hall*, 62 Mo. 423; *State ex rel. v. Frazier*, 98 Mo. 429; *Bowers v. Smith*, 111 Mo. 61; *Gaston v. Lambkin*, 115 Mo. 24; *Lankford v. Gebhardt*, 130 Mo. 628; *Hope v. Flentge*, 140 Mo. 390; McCreary on Elections, sec. 227. (3) To avoid the vote of an election precinct, for irregularities upon the part of election officers, which are not expressly prohibited or declared fatal by the legislature, it must be shown that the acts or omissions complained of were fraudulent and affected the result of the election, to the prejudice of the contestant, or that they prevented a full and fair expression of the popular will. *Bowers v. Smith*, 111 Mo. 62; *Hope v. Flentge*, 140 Mo. 390; *Boileau's* case, 2 Par. Eq. Cases, 503; *Frost v. Wilson*, 62 N. Y. 193; *Stinson v. Sweeney*, 17 Nev. 322; *Contest of E. R. Wheelock*, 82 Pa. St. 297; *Whipley v. McCune*,

12 Cal. 361; *Taylor v. Taylor*, 10 Minn. 107; *Dial v. Hallandsworth*, 19 S. E. Rep. 547; McCrary on Elections, secs. 222, 223, 224–227, 228. (4) Election Judges Huskey and Ansil, having exercised the office of election judges under circumstances of reputation or acquiescence, calculated to induce the voters of Fitzgerald precinct, without inquiry, to submit to or invoke their action, supposing them to be the officers they assumed to be, were *de facto* judges of election, notwithstanding either or both of them were not sworn to act as such. *Perkins v. Fielding*, 119 Mo. 159, and cases cited. (5) Whether the judges, who supplied the places of the two who were appointed by the county court and failed to attend at the polls, were duly elected by ten or more electors, or not, being a disputed question of fact, in the absence of instructions or finding thereon, this court will not determine. *Gunn v. Hubbard*, 97 Mo. 321; *Turner v. Drake*, 71 Mo. 287; *Lankford v. Gebhardt*, 130 Mo. 631.

BARCLAY, P. J,—This is a contested election case, brought to the Supreme Court by appeal of the plaintiff, or contestant, after a decision on the circuit in favor of the defendant, who holds the certificate of election to the office in dispute, which is that of collector of the revenue for Butler county. The proceeding began with a notice of contest, the grounds of which need not be specially stated at this point. In due time the contestee demurred to the notice. His demurrer was overruled. No answer was filed, but the parties went to a trial as upon a denial of the facts alleged. The court found for defendant, and the appeal followed in due course.

The plaintiff furnished in the brief of his counsel a summary of the evidence from which we take the following passages as fairly presenting the leading facts

bearing on the points raised by the assignments of error: "The testimony shows that the election in question was the general election for national, state and county officers, held November 3, 1896; that Alexander Sanders, the contestant, and John N. Lacks, the contestee, were respectively the Republican and Democratic candidates for the office of collector of the revenue within and for Butler county; that Fitzgerald was the name of a regularly constituted voting precinct in said Butler county. The evidence given by county clerk Spence shows that six judges were appointed by the county court to conduct the election in said Fitzgerald precinct; three of these appointees were Democrats and three Republicans. The Democratic and Republican parties cast the largest vote in said Fitzgerald precinct at the last general election preceding the election held November 3, 1896. The evidence of all the witnesses, both for contestant and contestee, who testified in relation thereto, was that the election in said Fitzgerald precinct was conducted by four judges only, and that one of them, John Huskey, was not sworn. Three of these judges, Kerby, Ansil and Huskey, were Democrats, and Nance alone a Republican; that but two of these four, Nance and Kerby, were of the judges appointed by the county court; that Huskey and Ansil were not appointed by the county court nor elected by the voters present at the election precinct to the number of ten or more; that two judges, Huskey and Nance, acted as ticket or ballot judges and also as receiving judges; that Kerby and Ansil, both Democrats, acted as counting judges; that several times during the day of the election there was but one judge to distribute and receive ballots and but one to count votes; that the attention of the judges, clerks and voters present was called to the fact that the law required six judges to constitute an election board;

that at the time of opening the polls there were enough voters present from whom there might have been selected six judges; that no election was held by the voters present at Fitzgerald precinct (to the number of ten or more) of judges to act in place of those appointed by the county court, but who failed to appear in time to perform their duties. . . . . . . Of the votes cast for collector of the revenue at Fitzgerald precinct on the 3d day of November, 1896, John N. Lacks, the contestee, received eighty votes and Alexander Sanders, the contestant, received forty-five votes; that of the total vote of the county cast for collector of the revenue at said election, John N. Lacks, the contestee, received one thousand, six hundred and thirty-one votes, and Alexander Sanders, the contestant, received one thousand, six hundred and nineteen votes. The evidence also shows that John N. Lacks, the contestee, received the certificate of election, took the oath of office and was commissioned as collector of the revenue within and for Butler county.''

The statement in plaintiff's summary of the evidence touching the failure to elect the substituted judges must be taken rather as the conclusion of counsel than as the fact itself. Further on we shall refer to the testimony on that point, and indicate our view of its legal effect. The various grounds of plaintiff's objections to the election will be stated along with the discussion thereof.

1. The Supreme Court has jurisdiction of this cause because it involves title to an ''office under this State.'' Const. 1875, art. 6, sec. 12; *State ex rel. Blakemore v. Rombauer* (1890) 101 Mo. 499 (14 S. W. Rep. 726).

2. The fact that no answer was filed does not require the court to take as true the allegations of fact in contestant's notice of contest. If any answer (or other

traverse as to facts) was necessary, in view of the broad language of section 4710 (R. S. 1889), the course of the plaintiff in going to trial without insisting on such traverse (or raising some objection to proceeding without it) must, at this stage of the controversy, be held to amount to a waiver of any such formal pleading. *Henslee v. Cannefax* (1872) 49 Mo. 295.

3. The general contention of the contestant is that the entire vote of Fitzgerald precinct should be thrown out, because of certain irregularities in the holding of the election there. The first objection of this nature is that one of the judges was not sworn by anyone authorized to administer oaths. The mere absence of an oath by a judge would not vitiate the election, assuming now that an oath is imperatively prescribed to be taken by the judges before entering on their duties. R. S. 1889, sec. 4665; *People v. Cook* (1853) 8 N. Y. 84; *Taylor v. Taylor* (1865) 10 Minn. 107. The omission of the oath is not pronounced by law to be fatal to the official authority of any such judge, and we consider such omission to be no worse than a like oversight on the part of a strictly judicial officer of the State when he enters upon his duties. It has been ruled in Missouri that the failure of a special judge to take an oath (prescribed by statute) does not invalidate the decision rendered by the said judge. *Vogt v. Butler* (1891) 105 Mo. 479 (16 S. W. Rep. 512). The principle of that ruling is applicable to the point now made. We consider the objection by appellant on that score untenable.

4. It is next insisted that the return from Fitzgerald precinct should be nullified because the election there was conducted by four judges instead of six. The reform ballot system (commonly called the Australian) which has been adopted as part of the law of Missouri, requires six judges at such a precinct as that

in view in this case. R. S. 1889, sec. 4777. The plaintiff insists that said requirement is vital and that a failure to observe it demands of the courts a cancellation of the vote of the people cast at any precinct where such a deviation from the law occurs. Plaintiff relies on the recent decision of the Court *in banc* in *Hope v. Flentge* (1897) 140 Mo. 390 (41 S. W. Rep. 1002), to sustain his contention on this point. That judgment, however, gives no countenance to any such theory as plaintiff advances. On the contrary, that case is authority for the proposition that no voter should be disfranchised on account of a mere irregularity occasioned by the neglect or misconduct of election officers (over whose conduct he has no control) unless the legislature has declared that such irregularity, neglect or misconduct should avoid the election or render the voter's ballot illegal.

It appears from the testimony in the case at bar that when the poll opened in the precinct there was some discussion among those present touching the number of judges required to preside. Finally four judges took charge, two of whom had been designated by the county court. There was no evidence that there was in this any intentional or fraudulent deviation from the law, or anything other than an innocent mistake as to the demands of the election statute. The law in force before the adoption of the Australian method of voting called for but four judges at that precinct.

Irregularities in the management of elections under the Australian ballot act have been the subject of many judicial decisions. The minute directions of that act for moving the machinery to express the popular will were not easy to master at once. So the introduction of the system in any locality was invariably accompanied by an exhibition of deviations from the

forms of procedure which the act laid down. In Australia, England and the United States judges who have been able to appreciate the larger objects and intent of the reform ballot act have been led to announce certain practical rules for dealing with such departures from the strict lines of conduct marked out by the act. The thought underlying those rules is the same that inspires a much older rule for the construction of written laws, namely, that the great purpose aimed at by a statute should never be sacrificed by too literal an adhesion to those minor provisions which are obviously intended merely as means to carry out the larger design of the act. Rutherforth, Insts. [2 Am. Ed.], p. 415.

Popular elections involve the exercise of one of the most cherished rights of the citizen in a free government. But the right of suffrage must needs be exercised under conditions which do not always admit of a rigid observance of every technical requirement of law. The judges of election who manipulate the machinery necessary to record the expression of the voters' will are usually laymen, unfamiliar with legal technicality, and often wholly innocent of that sense of the importance of matters of mere form which often seems to possess a strange fascination to some learned minds. Election judges are drawn from the great body of the people. They serve for a short while. In the main they do their best to faithfully perform their duties under the law. But they are often guilty of omissions and oversights in attempting to follow the strict letter of the law. In dealing with those lapses the courts have promulgated a practical general rule which seems to have a direct bearing upon the appeal at bar. That rule is thus stated by the most eminent American text writer on the law of this subject, viz: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its

omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory, if they do, and directory, if they do not, affect the actual merits of the election." McCrary, Elections [4 Ed.], sec. 225. The use of the terms "mandatory" and "directory" in this connection is, no doubt, sanctioned by usage in the law of elections by ballot. The terms are sometimes misleading and not strictly accurate; but they are convenient to point out the distinction between two general classes of irregularities, and they are sufficiently well understood to keep their places in the literature of the subject in hand.

Applying the rule already quoted, it is clear that the fact of four judges acting at a precinct in lieu of six (the complement prescribed by law) should not be held to deprive of their votes the citizens who voted at that precinct.

5. The next objection to the election is that the judges at the precinct were not equally apportioned to the two leading political parties. Of the four judges who finally acted, one was a Republican and three were Democrats.

It does not appear that any harm or prejudice to contestant's interests was occasioned by the failure to follow the law in the particular just mentioned. The full vote of the precinct was polled, counted, and returned. There is neither allegation nor proof of any

sort of fraud or misconduct on the part of the judges in performing any of their duties in connection with the election. Nor is there any showing of unfairness in the result. This being so, we hold that the general rule already quoted, as to the effect of irregularities at elections, should be applied, and that the objection last above stated should be considered insufficient to nullify the vote cast at the precinct in question. The objection is one, however, that we should be disposed to treat very seriously if there was any testimony of an unfair result, which there is not in this case.

6. Only two of the four judges who acted were appointed by the county court in advance of the election. The other two were not elected in any formal manner, but appear to have been informally designated by the voters (over ten in number) at the opening of the poll, and to have entered then on the discharge of their duties. One of the witnesses describes how this came about: "We simply accepted them in there by the common consent of all present" (referring to the two election judges not named by the prior order of the county court). Plaintiff contends that such a selection of the two judges was fatally irregular under section 4791, Revised Statutes 1889. But that section directs no special form of procedure for the election of substitute judges in event of the absence of a judge officially appointed by the county court. If the voters, in sufficient number, present at the time for opening of the poll, by common consent designate some qualified person to act as judge, such designation is an "election" of the judge within the meaning of the law.

7. We have noted all of the plaintiff's objections to the election which appear to merit any remark, and finding them groundless, affirm the judgment. MAC-FARLANE, ROBINSON and BRACE, JJ., concur.