STATE OF MISSOURI, Respondent, v. SWEARIN-GEN, Appellant.

St. Louis Court of Appeals, January 7, 1908.

1. **ELECTIONS: Local Option: Publication of Notice.** The notice of a local option election required by section 3029, Revised S'atutes 1899, must be published for four consecutive weeks. the last insertion to be within ten days before the election, and it must be published for four full weeks or twenty-eight days.

2. ———: ———: ———: **Proof of Publication of Notice.** No affidavit of the publisher is required to prove the publication of such notice, and on the trial of one charged with violation of the local option law, the fact of the publication of notice of election may be established by the testimony of the publisher and the production of copies of the paper containing the notice.

3. ———: ———: **Canvassing the Vote: Record Evidence.** Section 3027, Revised Statutes 1899, requires the result of a local option election to be entered upon the records of the county

court, but it does not require that such record shall show that the clerk of the county court called the judges to his assistance in casting up the vote. In a case where the validity of an election is in issue, the clerk may testify to the fact that the judges assisted him in casting up the vote in accordance with section 7007, Revised Statutes 1899.

4. ———: ———: **Judges of Election.** Section 3027, Revised Statutes 1899, requires that local option elections shall be conducted in, all respects in accordance with the laws of this State governing general elections for county officers, and sections 6996 and 7101, Revised Statutes 1899, require six judges of election to be appointed by the county court in each election district at a general election, and therefore in a local option election the law requires the appointment of six judges for each election district.

5. ———: ———: ———: **Directory Law.** The law requiring the appointment of six judges for each election district is not mandatory but directory only, and in a local option election where only four judges were appointed for each election district, but where there was nothing to show that the election was not full, free and fair on that account, the election would not be invalidated for that reason.

6. ———: ———: ———: ———: **Statutory Interpretation.** If a statute concerning elections provides that a thing shall be done in a particular manner, but does not declare that manner to be essential to the validity of the election or that its omission would render the election void, the statute is directory merely and not mandatory, and this rule applies to the appointment of judges of an election.

7. ———: ———: ———: **Swearing Judges.** The fact that one of the judges of an election swore the others but was not himself sworn, did not invalidate the election, although the statute requires all the judges to be sworn, in the absence of any showing that the election was not fair and an honest expression of the popular will.

Appeal from Douglas Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*Burkhead & Clarke* for appellant.

NORTONI, J.—The defendant was charged and convicted of the offense of selling intoxicating liquors in violation of the local option law, which law had recently theretofore been declared adopted in Douglas county.    He makes no point on appeal with respect to error intervening on the trial.    The questions presented relate solely to alleged irregularities in certain matters pertaining to the election by which the local option provisions were adopted.    The statute (R. S. 1899, sec. 3029) provides for notice of the local option election to be given by publication in some newspaper published in the county for four consecutive weeks, the last insertion of which is to be within ten days next before the date of such election.  It has several times been decided that this provision, as to the time of notice, means four full weeks; that is, twenty-eight days. [State v. Webber, 32 Mo. App. 620; In re Woodridge, 30 Mo. App. 612; Leonard v. Saline County Court, 32 Mo. App. 633; Bean v. Barton County Court, 33 Mo. App. 635; State v. Kauffman, 45 Mo. App. 656; State v. Kauffman, 75 Mo. App. 188.]    In compliance with this statute, the county court at the time of ordering the election, ordered that notice thereof be given by publication in the Douglas County Herald, a newspaper published in the county, for four consecutive weeks, the last insertion to be within ten days next before the ninth day of September, 1905, which last-mentioned date was fixed for the election.    In obedience to this order, the proper notice was published in the Douglas County Herald for four consecutive weeks, as directed. The publisher of that paper, ·in making proof of the fact of publication, however, made a return showing the notice to have been published in his paper for four consecutive weeks, beginning August 17th, and the last insertion to have been published September 7, 1905, which was in fact less than the four full weeks or twenty-eight days' notice required by the law.    Afterwards,

error was discovered in this affidavit of publication and a new one made and filed with the county clerk, in which it was shown that the notice of the election was published in the newspaper "for five weeks consecutively as follows: beginning in vol. 19, No. 25, dated August 10, 1905, and ending in vol. 19, No. 29, dated September 7, 1905." The publisher who made the affidavit was introduced as a witness by the State, and testified to the fact of publication. He gave evidence to the effect that there was error in the first proof of publication filed as above indicated and that the notice was in fact published in five consecutive issues of the paper, beginning August 10th and concluding September 7, 1905, as indicated in the second proof of publication referred to. The second affidavit was introduced and copies of the newspapers containing the notice were exhibited in connection with the evidence of this witness. In view of the fact the first affidavit or proof of publication showed less than twenty-eight days' notice, it is argued the trial court erred in permitting the State to establish the fact of proper notice by the oral evidence of the publisher. The statute does not point out any manner in which the fact that due notice has been given, shall be proven and therefore the affidavit of the publisher, whether correct or incorrect, is certainly not conclusive on the question. Such affidavit is not required by the statute and is in no sense entitled to be accorded the dignity due a public record. In this connection, the matter with which the law is concerned, is whether or not the notice was given in the manner required by the statute. It is the fact of due notice that must be established. If full and proper notice is given, such may be established, of course, by the evidence of the publisher to that effect, or by the production of copies of the paper containing the notice in connection with his evidence, or that of any other person acquainted with the facts and competent to speak there-

on, or by any other competent proof, for that matter, identically as any other fact may be proven. [State v. Baker, 36 Mo. App. 58, 63; State v. Hutton, 39 Mo. App. 410, 417; State v. Dugan, 110 Mo. 138, 146, 147; 19 S. W. 195; 19 Am. and Eng. Ency. Law (2 Ed.), 501, 508, 509.]

2. The State introduced in evidence a statement of the vote, tabulated by precinct, showing a majority of four hundred against the sale of intoxicating liquors in the county. It appears from this the vote was canvassed and the result ascertained within five days after the election, as required by the statute. It is signed and certified by the county clerk. Two judges of the county court signed their names thereto as witnesses. The county clerk gave evidence *ore tenus* that he called the two judges to his assistance as directed in section 7007, Revised Statutes 1899, and that they, together with him, examined and cast up the vote. The result of the election as disclosed by the tabulated statement, was properly spread upon the record of the county court in obedience to the provisions of section 3027, Revised Statutes 1899, in that behalf, as appears by the county court record introduced by the State. It is argued that there was error in admitting in evidence this tabulated statement and certificate in connection with the testimony of the clerk for the reason it does not appear from the recitals on the face of the statement, that the two judges of the county court were called by the clerk to assist in examining and casting up the vote, it appearing only that they witnessed the proceeding, and that it was error to permit the clerk to give evidence to the effect that he called the two judges and that they actually assisted him in examining and casting up the vote. The argument is not tenable. The statute requires no more than that the clerk shall "take to his assistance two justices of the peace of his county or

128 App.—39

two judges of the county court and examine and cast up the vote given to each candidate and give to those having the largest number of votes, certificates of election." In this election, there were no candidates and therefore so much of the statute as provides for certificates of election to be given to them is not pertinent. There are no words in the statute which either express, or by reasonable construction, intend, the clerk shall recite in any tabulated statement or certificate he may make, that he called two judges or justices of the peace to his assistance and that they, together, examined and cast up the vote; and the mere fact that the judges signed the certificate as witnesses is unimportant if they actually participated with him in discharging the duty enjoined. The statute (sec. 7007) is concerned with the fact that the vote shall be examined and cast up and the result ascertained in the manner and by the persons prescribed only, and it is immaterial, so far as that statute indicates, what form may be used by the clerk and his assistants evidencing that result. Section 3027, requires, however, that this result shall be entered upon the county court records. This was properly done. No word in either statute suggests how the fact that the clerk called the judges to his assistance or that they assisted in examining and casting up the vote, shall be made to appear. Under such circumstances, it was entirely competent for the clerk to explain that the two judges who signed the statement as witnesses, were actually called upon by him and did assist in examining and casting up the vote in accordance with the provisions of the statute. [State v. Searcy, 46 Mo. App. 421; State v. Searcy, 111 Mo. 236, 20 S. W. 186; State v. Searcy, 39 Mo. App. 393.]

3. It appears the election was conducted by a less number of judges than is contemplated in the statute. The condition obtained alike in every voting precinct of the county. The county court failed to appoint the

complement of judges provided for by law.    The several
statutory provisions and pertinent facts are as follows:
The local option statute (R. S. 1899, sec. 3027), in
contemplation of elections looking to an expression of
the popular will upon the question of adopting the law,
provides:    "Such election shall be conducted, returns
thereof made and result thereof ascertained and deter-
mined in accordance in all respects with the laws of
this State governing general elections for county offi-
cers," etc.    There seems to be two separate provisions
of our statutes with respect to the matter of appointing
judges by the county court for the general election of
county officers.    The first of these is to be found in sec-
tion 6996, Revised Statutes 1899, as follows:    "In all
counties in this State, four judges of election shall be
appointed by the county court for each election precinct
in each of said counties."    Section 7101, Revised Stat-
utes 1899, on the same subject, provides:    "At the same
time and in the same manner as judges of election are
appointed or elected, two additional judges of election
for each election district in the State shall be appointed
or elected; three of the judges shall be taken from the
political party that polled the largest number of votes
at the last preceding general election, and three of the
judges from the party that polled the next largest vote,"
etc.    It is quite clear that these statutes, when consid-
ered together, contemplate and authorize the appoint-
ment of six judges for each and every election dis-
trict or precinct, to preside at the general elections for
county officers.    There is no doubt about this.    This
construction is acceded to and acted upon by all con-
cerned in every election, as is well known.

The defendant introduced in evidence the records
of the county court appointing the judges for this elec-
tion, together with the poll books used thereat, and re-
turned by them to the county clerk; all of which dis-
closed; first, that the county court, instead of appoint-

ing six judges, as contemplated by the two sections of
the statutes, when considered together, appointed four
judges only for each precinct in the county.   The court
probably consulted section 6996 above referred to and
overlooked the provisions for the two additional judges
contained in section 7101.   Second, it appears from the
return of the poll-books that not more than four judges
presided at the polls in any precinct.   The defendant
predicates an argument upon these facts alone to the
effect that this failure of the county court to appoint
the full complement of judges and the irregular con-
duct of the election by four instead of six judges in
each precinct, renders the entire election invalid. There
is no intimation of fraud or misconduct with respect to
any feature of the election or its returns, nor is it in-
timated that a full, free and fair vote was not had for
the reason there was an insufficient number of judges.
The proposition as presented is purely one of law, aris-
ing on the face of the county court record and poll
books.   The court is urged, on this alone, to pronounce
invalid the result of this election which appears to have
been ascertained by a fair count of a full, free, and un-
trammelled poll, manifesting the popular will.   There
may be, and no doubt is, a grave question as to whether
or not in this prosecution for selling liquor, the valid-
ity of the election looking to the adoption of the law,
can be thus assailed collaterally for mere irregularities
in providing the machinery and returning the results
of the poll, especially when such irregularities in no
manner affect the jurisdiction of the county court in
the premises.   Counsel have offered no suggestions
along this line, however, and the question will there-
fore remain unnoticed, inasmuch as a proper result may
be attained in the case by an appropriate application
of another and different principle touching the merits
of the controversy.   It is certain, on the record before
the court, that the fact that only four judges were ap-

pointed for and presided at the various precincts, in no manner affected the result of the election. It is likewise certain that the statutes providing for the appointment of six judges and their conduct of the election, in no manner, either in express terms or by reasonable intendment, declare that either the appointment or presence of the full complement of judges shall be essential to the validity of the election; or that the omission to appoint the full complement or the omission of that complement to preside, shall render the election invalid. In view of these propositions, it will be conceded that the statutes providing for a complement of six judges are, under the established rule, to be regarded as directory merely and not mandatory. Under such circumstances, the rule is thus clearly stated by Judge McCrary in his most excellent work on elections: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute, must so hold, whether the particular action in question goes to the merits, or affects the result of the election or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election." [McCrary on Elections (4 Ed.), sec. 225.]

The rule thus announced has been pointedly approved by our Supreme Court in one of its soundest judgments, as is obvious from a study of the doctrines. [See Sanders v. Lacks, 142 Mo. 255.] The rule is sound in principle and obtains generally. [10 Am. and Eng.

Ency. Law (2 Ed.), 588, 670, 671, 672; Bowers v. Smith, 111 Mo. 45, 20 S. W. 101; Hehl v. Guion, 155 Mo. 76, 55 S. W. 1024; Parvin v. Winberg, 130 Ind. 561; 30 Am. St. Rep. 561; State v. Russell, 34 Neb. 116; 33 Am. St. Rep. 625.] It is well settled that these principles obtain with respect to elections looking to the adoption of the local option law, identically as they do in other elections. In such cases the rule is that mere irregularities which in no way affect the result, will not invalidate the election. Authorities are numerous. [Chapman v. State, 37 Tex. Crim. 167; Sneed v. State, 40 Tex. Crim. 262; 19 Am. and Eng. Ency. Law (2 Ed.), 504; see also Gilleland v. Schuyler, 9 Kan. 569; State ex rel. v. Stumpf, 21 Wis. 579; Sprague v. Norway, 31 Cal. 173; McCabe v. Arcularius, Armstrong's Contested Election Cases, 332.] In the absence of something to the contrary appearing in the statute, the rule obtains that provisions authorizing the appointment of election officers by a particular person or court, are directory as contradistinguished from mandatory, so that irregularities in such appointment will not invalidate an election if nothing appears to contaminate the result in any manner. [10 Am. and Eng. Ency. Law (2 Ed.), 671; McCraw v. Harralson, 4 Coldw. (Tenn.) 42; Gilleland v. Schuyler, 9 Kan. 569; People v. Cook, 14 Barb. 284-289; 8 N. Y. 67; McCrary on Elections (4 Ed.), sec. 227.] In this connection, it may be said that our Supreme Court, in Sanders v. Lacks, 142 Mo. 255, 43 S. W. 653, pointedly determined that the mere fact that four judges acted in the precinct instead of six, as directed by the statute, was not sufficient to overthrow the result of the poll thereat, in the absence of a showing of fraud or misconduct in the election. In that case, however, the county court had appointed a full complement of judges and in that fact it is to be distinguished from this. All of the judges appointed not appearing for servive, four

only presided and the election was challenged for that reason. The assignment of error will be overruled.

4. It appears from the poll books that in some precincts, one of the election judges administered the oath required by law to his associates, who subscribed thereto. Nothing appears, however, evincing that the first-mentioned judge was sworn or subscribed to the oath himself, either before or after administering the oath to his associates. The validity of the election in such precincts is assailed for this reason and the result thereof sought to be set aside. It will be unnecessary to prolong the opinion in discussing this assignment. The statutes providing that election officers shall take an oath, etc., are universally regarded as directory merely. In view of this proposition of law, together with the fact of a fair result in the election which stands conceded, the principle last above referred to applies with equal force to this irregular omission on the part of the judges. An honest expression of the popular will, certainly ought not to be overthrown on a mere pretext. The point with respect to judges of election acting without being sworn, has been determined by our Supreme Court in Sanders v. Lacks, 142 Mo. 255. [See also Taylor v. Taylor, 10 Minn. 107; People v. Cook (N. Y.), 4 Seld. 67; 10 Am. and Eng. Ency. Law (2 Ed.), 672 and numerous cases cited.] Under such circumstances, the judges who were not sworn having been appointed by competent authority, were officers *de facto* at least and the validity of the acts of such officers, in so far as third persons and the public are concerned, is nowhere questioned, so far as we know. Authorities are many and in point. [McCrary on Elections (4 Ed.), sec. 251; 10 Am. and Eng. Ency. Law (2 Ed.), 672; St. Louis County Court v. Sparks, 10 Mo. 117, 121.]

There are other questions presented. What has been said, however, determines the principle which should control their adjudication. To examine them

separately would serve only to prolong the opinion. They will be overruled.   It is so ordered.

The judgment is affirmed.   *Bland, P. J.,* and *Goode, J.,* concur.