**J. H. HORSEFALL et al., Plaintiffs in Error, v. SCHOOL DISTRICT, CITY OF SALEM, Defendant in Error.**

Springfield Court of Appeals, May 2, 1910.

1. SCHOOL BONDS: School Elections: Purpose for Which Money Can Be Used. Where an issue of school bonds has been authorized by the voters at a special election held for that purpose, the money from the sale of the bonds can be used only for the purpose for which the bonds were voted; so where the notice of election notifies the voters that the bonds were for the purpose of erecting a high school building, the money cannot be used to purchase a site for the building nor for paying existing indebtedness.

2. SCHOOL ELECTIONS: Manner of Holding not Under Australian System. School elections are expressly exempted from the operation of the election law known as the Australian system.

3. ———: Election for Bond Issue: Form of Ballot: Numbering Ballot. At a special school election held for the purpose of authorizing a bond issue, the form of ballot did not strictly comply with the statute, and some of the ballots were not numbered by the judges when voted. There was no charge of fraud and no pretense that the election was not fair, or that any voter was in any way misled. There was a large majority for the bond issue. *Held*, that the election was legal and the ballots should be counted.

4. ELECTIONS: Mandatory and Directory Provisions. If the statute provides specifically that a ballot not in a prescribed form shall not be counted, then the provision is mandatory and the courts will enforce it; but if the statute merely provides that certain things shall be done and does not prescribe what results shall follow if these things are not done, then the provision is directory merely, and the final test of the legality of either the election or the ballot is whether or not the voters have been given an opportunity to express, and have fairly expressed their will.

5. **SCHOOL BUILDINGS: Erection of High School Dependent Upon Sufficiency of Other Buildings.** At a special school election, bonds had been voted for the purpose of erecting a high school building. In a suit to enjoin the issuing of said bonds, it was contended that the high school could not be built because there were not sufficient accommodations in the district for the other grades. *Held*, that the evidence was sufficient to justify the finding that the building already owned by the district was sufficient for the other grades.

Writ of error to Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*A. J. Arthur* and *Lamar & Lamar* for plaintiff in error.

(1) The election was also illegal because the ballots were illegal and did not have printed thereon the language expressly provided by the statute. R. S. 1899, sec. 9752; People ex rel. v. Hanson, 36 N. E. 998; Union Co. v. Ussery, 35 N. E. 618. (2) Provisions of the statute prescribing the kind of ticket to be used by the voter are mandatory. Hope v. Flentge, 140 Mo. 402; McCay v. Minner, 154 Mo. 616; West v. Ross, 53 Mo. 350; Ledbetter v. Hall, 62 Mo. 432. (3) The school board has no authority to establish or create a high school until it has first provided buildings and accommodations for the primary and common school grades to meet the demands of all children of the district of that class. R. S. 1899, sec. 9865; State ex rel. v. Jones, 154 Mo. 575.

*Wm. P. Elmer* for defendants in error.

(1) The Australian Ballot Law does not apply to school elections. R. S. 1899, sec. 7116; State ex rel. v. Tarkio, 116 Mo. 418; Donnell v. Lee, 101 Mo. App. 191. (2) The failure of the judges to endorse the number and their initials on the ballots did not prevent the judges from rightfully counting them. R. S. 1899, sec.

7104; Hehl v. Guion, 155 Mo. 84; Lankford v. Gebhart, 130 Mo. 630; Bowers v. Smith, 111 Mo. 61; Donnell v. Lee, 101 Mo. App. 191. (3) The technical defects in the form of the ballot are to be disregarded, unless the ballot was confusing, misleading, or affected the actual merits of the election. Payne on Elections, sec. 528; 10 Am. and Eng. Ency. Law, 709, 722; 5 Ency. Evidence, 59; State v. Swearingen, 128 Mo. App. 605; Sanders v. Lack, 142 Mo. 255; Bowers v. Smith, 111 Mo. 61. (4) The board of directors has the authority to establish a high school, select a site, erect a house and furnish the same. R. S. 1899, sec. 9865; State ex rel. v. Jones, 155 Mo. 570; Burnham v. Rogers, 167 Mo. 17; Martin v. Bennett, 122 S. W. 779; 3 Words and Phrases, 2469-2472.

COX, J.—Action by injunction to restrain defendants who are the board of directors of the school district of Salem from issuing bonds of the district in the sum of twenty-five thousand dollars. A temporary writ was issued, and, on trial, this was dissolved and the issues found for defendants. Plaintiff brings the case here by writ of error.

A special election was held in the district on May 8, 1909. There were two orders of the board calling the election, one to vote on a proposition to issue bonds of the district in the sum of twenty-five thousand dollars for the purpose of erecting a high school building therein; another order of the board was made calling an election to be held on the same day to vote on two sites for the location of the high school building—one known as the McMurtrey site, and the other as the Douglass site. The clerk was directed to post notices as required by law for each one of these elections. The notices posted, however, as preserved in this record, apply only to the question of the loan and said nothing about site. The ballots used at the election on the question of the loan were in this form: "For the loan, Yes. For the loan, no." The result of the election as certified by the

judges and clerks was that, "For the loan, Yes," had 268 votes, and "For the loan, No," had 83 votes. On the question of site the forms of the ballots were: "For the McMurtrey site, Yes. For the Douglass site, yes," and the returns showed that the McMurtrey site had 229 votes, and the Douglass site had 111 votes. The evidence further tended to show that there were three judges and two clerks; that ballots for the use of the voters, in the forms above set out, were furnished at the voting places, and that in the early part of the day, until about one hundred votes had been cast, the voters who voted on both propositions, folded their two ballots together, and the receiving judge, in numbering the ballots placed one number only which would be on the outer ballot of the two. The foregoing are substantially the facts developed at the trial.

Plaintiffs, in their petition, allege that the election for the purpose of authorizing the board to issue the bonds of the district was void and assigns therefor ten reasons. Several of these relate to the use which the board is proposing to make of the money realized from the sale of the bonds and to the action of the board and the conduct of the election in relation to the question of a site on which to build a new high school building. As to the intended use of the money, it is sufficient to say that the order of the board providing for the election and the notice of election provide only for the issuing of bonds in the sum of twenty-five thousand dollars for the purpose of erecting a high school building, and the board of directors have no authority to use any of the money they realize from the sale of these bonds for any other purpose. The notice of election notified the voters that this money was to be used for the purpose of erecting a high school building, and they, having voted upon that proposition, the hands of the board are tied, and they cannot use any part of it for the purpose of purchasing a site, nor for paying existing indebtedness, nor for any purpose except that for which it was

voted, which is the erection of a high school building. The evidence, however, that the board was attempting to divert any part of this money from the purpose for which it was voted is not very satisfactory, and we assume that on this issue the finding of the court was for the defendant for the reason that the plaintiff had failed to prove his allegations.

The main contention in this case is that the election authorizing the issuing of the bonds was void, and various reasons are assigned therefor. One is that the election was not held as the law provides elections shall be held for state and county officers. The law governing elections applicable to these offices is now what is known as the Australian system and it expressly excepts school elections from its operation, and, for that reason, that point must be ruled against the plaintiff.

It is next contended that the irregularities in the election, the folding of two ballots together by some of the voters, the failure to place a number upon each ballot, and the fact that the form of the ballots used on the question of the loan was not in the exact form prescribed by the statute, are such material defects as to render the election void. The ballots used read: "For the loan, Yes. For the loan, No," while the form prescribed by the statute is simply, "For the Loan. Against the Loan," it is contended that the irregularities, above mentioned, are such as to render the election void.

The decisions of the Supreme Court in this State have not been altogether harmonious as to the effect of irregularities upon the result of an election, and we shall not attempt to review these cases, but we think it may now be said to be the established rule in this State, as it is generally in other jurisdictions, that when a statute expressly declares any particular act to be essential to the validity of an election, then the act must be performed in the manner provided or the election will be void. Also if the statute provides specifically that

a ballot not in a prescribed form shall not be counted, then the provision is mandatory and the courts will enforce it; but if the statute merely provides that certain things shall be done and does not prescribe what results shall follow if these things are not done then the provision is directory merely, and the final test as to the legality of either the election or the ballot is whether or not the voters have been given an opportunity to express, and have fairly expressed their will. If they have, the election will be upheld, or the ballot counted as the case may be. [Bowers v. Smith, 111 Mo. 45, 20 S. W. 101; Hope v. Flentge, 140 Mo. 390, 41 S. W. 1002; Sanders v. Lacks, 142 Mo. 255, 43 S. W. 653; State ex rel. v. Roberts, 153 Mo. 112, 53 S. W. 520; McKay v. Minner, 154 Mo. 608, 55 S. W. 866; Hehl v. Guion, 155 Mo. 76, 55 S. W. 1024; State v. Swearingen, 128 Mo. App. 605, 107 S. W. 1.]

An examination of these cases will show that they are not all in harmony in all particulars, but we think it fair to say that the general rule above stated can now be said to be fairly supported by these authorities.

In this case there is no charge of fraud and no pretense that the election was not fair, or that any voter was in any way misled. The order of the board calling the election, and the notice of election, were regular in every way as far as they relate to the bond issue, and as the voters have fairly expressed themselves and given a substantial majority—more than the required two-thirds, their action should be upheld.

It is further contended in this case that no power existed in the board to call an election for the purpose of providing means to erect a high school building for the reason that the district had not been divided into wards and ward buildings erected therein sufficient to accommodate what may be denominated the pupils studying the common school branches. It is claimed that the accommodations existing in the district are not sufficient to accommodate these lower grades, and that until

provision is made for that purpose a high school building can not be built. There was evidence tending to show that the building which the district now owns would be sufficient for the accommodation of the lower grades if provision were made elsewhere for the high school grades, and as the court found the issues for the defendant, we assume that this issue of fact was found against the plaintiff, and an examination of this record convinces us that the finding is warranted by the testimony.

On the whole the judgment is for the right party, and will be affirmed. All concur.