STATE EX REL. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appelland, v. A. L. DARBY, Director of Finance of Kansas City.—64 S. W. (2d) 911.

Division One, October 19, 1933.

1146

E. T. Miller, Henry S. Conrad, L. E. Durham and Hale Houts for appellant.

*George Kingsley, J. C. Petherbridge, Joshua Barbee* and *William F. Allen* for respondent.

STURGIS, C.—Proceeding in mandamus. The constitutional question involved gives this court jurisdiction of the appeal. The petition asks the court to issue its writ commanding the respondent to issue a warrant in favor of relator in the sum of $1,644.21 against a fund designated as "Turkey Creek Sewer Bond Fund." The respondent filed a motion to quash the alternative writ of mandamus and to dismiss the case. The trial court sustained this motion and entered judgment denying the peremptory writ and dismissing the case. From this judgment the relator has appealed.

As the motion to quash the alternative writ was in effect a demurrer to the petition and writ and was based on the ground that "relator's petition on which said writ is based and was issued does not state facts sufficient to constitute a cause of action against the respondent, and does not entitle the relator to the relief prayed for

or to any relief," we must look to relator's petition for the facts, which petition the motion to quash concedes to be true as to the facts, though not so as to the conclusions of law stated therein. Said petition, omitting formal parts, reads:

"(2) That in the year 1919, Kansas City, under Ordinance No. 33664, approved September 24, 1918, acquired by condemnation proceedings in the Circuit Court of Jackson County, Missouri, at Kansas City, a sewer right of way for a sewer which is commonly known and called the 'Turkey Creek Sewer;' that said sewer right of way was paid for by special assessments fixed and made by a jury in said condemnation proceedings upon the lands in a benefit district established by said ordinance which included all the lands in the natural drainage area draining into and through said sewer and ultimately into the Kansas River; that the lands and right of way of relator located within said benefit district were assessed with benefits (as well as other lands in said district) in the sum of $1,644.21 as its proportion of the cost of said sewer right of way, which relator has paid; that in said condemnation proceedings, certain of the lands and right of way of the relator were taken and condemned as and for a part of said sewer right of way, for which relator was awarded the sum of $2,548.70, as damages, which amount has been paid to the relator by Kansas City for its lands and right of way so appropriated for said sewer right of way.

"(3) Relator further alleges that after said sewer right of way had been acquired as aforesaid, Kansas City, under Ordinance No. 37021, let a contract for the construction of said Turkey Creek Sewer on and along said sewer right of way, and in the years of 1920, 1921 and 1922, caused said sewer to be constructed, and to be paid for by issuing special tax bills therefor on all of the lands in a joint sewer district which was co-extensive with the aforesaid benefit district; that the lands and right of way of relator within said district were assessed and charged (as well as all other lands in said district) with special tax bills to the extent and in the amount of $34,121.97, as a part of the cost of constructing said sewer, which amount the relator paid.

"(4) Relator further alleges that thereafter and on February 26, 1924, Article XIV of the Constitution of Missouri was amended by adopting Section 15 of Amendment No. 19, relating to said Turkey Creek Sewer which reads as follows:

"'Sec. 15. Kansas City may assume the cost of constructing the Turkey Creek Sewer and the Blue River Sewer or either of them, and pay for the same, and refund assessments heretofore or hereafter collected on account of the same, out of the proceeds from the sale of bonds that may be authorized under the provisions of this Article, for the respective purpose.'

"(5) That thereafter, Kansas City, Missouri, by Ordinances No: 47479 and 47480 duly enacted in pursuance of the aforesaid Amendment to the Constitution of Missouri, held a City Bond Election on the 5th day of August, 1924, at which Bond Election there was submitted to the voters of Kansas City, Missouri, a proposition for the issuance of $3,000,000 bonds 'For the purpose of assuming the cost of constructing the Turkey Creek Sewer and paying for the same and refunding the assessments heretofore or hereafter collected on account of the same.' The assessments for said sewer totaled $73,000 for right of way and $2,800,000 for work of construction. That said bonds carried and were by Kansas City, Missouri, sold and the proceeds thereof realized; that Kansas City, Missouri, has refunded out of the proceeds of said bonds and paid back to relator the sum of $34,121.97, being the amount of special tax bills issued against its land and right of way as its part of the cost of the work of constructing said sewer, as aforesaid; but Kansas City, Missouri, refuses to refund and pay back to relator the aforesaid sum of $1,-644.21 assessed against its lands and right of way as its part of the cost of the right of way for said sewer; that there is now in the treasury of Kansas City, Missouri, in the 'Turkey Creek Sewer Bond Fund,' sufficient of the proceeds of the sale of said bonds to pay the aforesaid claim of this relator amounting to $1,644.21, so assessed against its land for said sewer right of way. . . .

"(8) That relator has demanded of respondent as Director of Finance of Kansas City, Missouri, a refund of said assessment, aggregating $1,644.21, and has demanded that said respondent draw a warrant upon the Treasurer of Kansas City, Missouri, for said sum and to pay and refund said assessment so paid by relator; that said respondent has failed and refused to make said refund and has refused to draw a warrant therefor. . . .

"Wherefore, relator, being without other adequate remedy, prays the issuance of an alternative writ of mandamus herein directing and commanding respondent A. L. Darby, Director of Finance of Kansas City, Missouri, forthwith to draw, execute, issue and deliver to relator a warrant on the 'Turkey Creek Sewer Bond Fund,' for the sum of $1,644.21, refunding said assessment, or to show cause why he has not done so, and upon the final hearing of this cause to make said writ peremptory, and for such other process, orders and remedies as may to the court seem meet and proper, and for costs herein."

In addition to the above allegations as to the facts, the petition contains these allegations as relator's conclusions of law on such facts:

"(6) That the proceeds of the sale of said bonds, under said bond issue, are applicable to the payment of the claim of relator for a refund on account of the amount assessed against its property and

paid by it as a part of the cost of the right of way for said sewer.

"(7) That the cost of the right of way of said sewer and the assessments made therefor on the lands and right of way of relator and paid by relator, under the provisions of the aforesaid amendment to the Constitution and the bond issue, is a part of the cost of the construction of said sewer and an assessment to be refunded, and should be refunded to relator.

"(9) That under the foregoing facts, it is the duty of Kansas City to refund to relator, and it is the duty of respondent A. L. Darby, Director of Finance, to draw a warrant on the Treasurer of Kansas City, Missouri, against the 'Turkey Creek Sewer Bond Fund' in favor of relator for said sum of $1,644.21."

These conclusions of law are not admitted by the motion to quash.

The motion to quash the alternative writ, in addition to the ground that the facts stated do not warrant the relief prayed for, alleges as grounds therefor:

"2. Because under the terms and provisions of the amendment to the State Constitution and the terms and provisions of the ordinances under which the bonds were authorized, issued and sold in pursuance of said constitutional authority, set forth in relator's petition, the relator was entitled *only* to a refund of the amount which it paid on account of 'the cost of constructing the Turkey Creek Sewer,' which refund has been made to relator; but it was not and is not now entitled to a refund, out of the proceeds of said bonds, of the amount which it paid on account of the *cost of acquiring the right of way* for said sewer, in the condemnation proceedings instituted and carried on for the purpose of acquiring such right of way."

This outlines both the facts and the contentions of each party as to the law.

The relator contends, and we think correctly so, that the Constitutional Amendment of 1924, now Sections 14 and 15 of Article XIV, Constitution of Missouri, the last section being heretofore quoted, is broad enough to have authorized Kansas City not only to assume the cost of constructing and paying for "Turkey Creek Sewer" and to refund the assessments theretofore or thereafter collected for the work and material furnished in doing so, but also to refund the assessments collected for acquiring the land and right of way for same. While, strictly speaking, the power to construct a sewer or other public improvement does not cover the power to acquire the land or right of way on and over which the same is constructed, yet the power to build or construct a public building or improvement carries with it the implied power to acquire the site on or over which the same is constructed. Section 14 of the Constitutional Amendment of 1924, which immediately precedes and is closely connected with Section 15, supra, provides as follows:

"Kansas City may, from time to time, issue serial bonds to pay for public improvements, which bonds shall be payable in annual installments, the first maturing to fall due in not more than three years and the last maturing in not more than forty years from issue. Provided, that the bonded indebtedness of the city shall not exceed the limits provided in this Constitution; and, provided further, That such bonds shall be authorized by a vote in favor thereof of two-thirds of the electors of such city voting . . . at a general or special election, called and held as now or may be provided by law."

Then follows Section 15, heretofore quoted, providing that such city "may assume the cost of constructing the Turkey Creek Sewer and the Blue River Sewer or either of them, and pay for the same, and refund assessments heretofore or hereafter collected on account of the same, out of the proceeds from the sale of bonds that may be authorized under the provisions of this article, for the respective purpose."

The first section of this constitutional amendment gives the city broad and general powers to make and pay for public improvements by the issue of bonds, subject to the limitations mentioned. The second section, which is now in question, is specific and applies only to the construction of two specified sewers. As to one of these sewers, Turkey Creek Sewer, the right of way had been acquired by the city by condemnation and otherwise some six years prior to the adoption of this constitutional amendment. It had been fully paid for by assessments and awards of damages and benefits in a prescribed benefit district. The relator was the recipient of both damages and benefits, the latter exceeding the former, and both had been paid. That was a completed transaction. The total cost of acquiring the sewer right of way was about $73,000, and the benefits paid by relator were $1,644.21. This latter is the amount now in controversy.

Some three or four years prior to the adoption of the constitutional amendment in question, Kansas City enacted an ordinance providing for the construction of Turkey Creek Sewer along and over this right of way. The total cost of the construction of this sewer was $2,800,000, and was paid or to be paid in special tax bills issued by the city against the various tracts of land in the taxing district and delivered to the contractor for constructing the sewer. This condition is reflected in the language of the constitutional amendment providing that the city may "assume the cost of constructing" and may "refund assessments heretofore or hereafter collected on account of the same." The relator had paid or its land was liable for special tax bills issued for *constructing the sewer* amounting to $34,121.97. The constitutional amendment having been adopted, the city on August 5, 1924, submitted the bond issue of $3,000,000, and it was voted in these words: "For the purpose of assuming the

cost of constructing the Turkey Creek Sewer and paying for the same and refunding the assessments heretofore or hereafter collected on account of the same." Thereupon the city paid or refunded to the relator the amount it had paid or was obligated to pay on special tax bills against its property for constructing the sewer, the sum of $34,121.97. The relator by this suit demands that the city pay it out of the proceeds of this bond issue an additional sum of $1,-644.21, representing the amount it paid for benefits assessed against it in the original proceeding by the city to acquire the sewer right of way some six years prior to the bond issue.

As we have said, had the city chosen to do this, we are inclined to hold that the Constitutional Amendment, Section 15 of Article XIV, supra, gives the city the implied, though not the express power to do this. The express power given is to "assume the cost of constructing the sewer and refund assessments . . . collected on account of the same." But the power to construct the sewer carries with it the implied power, though not the duty to exercise that power, to acquire the site or right of way of the improvement. It was so held by this court in Sheidley v. Lynch, 95 Mo. 487, 497, 8 S. W. 434, where Jackson County, in which the circuit court held terms at more than one place, was given the power to "cause the erection of a good and sufficient court house," etc., at the place where circuit court was held other than at the county seat, and this court said: "Independence is the county seat of Jackson County, and as terms of the circuit court of said county are, by law, held at the City of Kansas, there can be no question but that the act above quoted confers the power on the county court of said county to build a courthouse and jail in said city, and this power thus expressly given carries with it every incidental power necessary to the execution of the power expressly conferred," including the power to purchase a site when a new site was reasonably necessary. This principle cannot be better expressed than in the Virginia case of Supervisors v. Gorrel, 20 Grat. 484, 505, where the County Supervisors of a Virginia county were by statute given the power "to build and keep in repair county buildings," and the court said: "The implied power to acquire the ground is as plainly given as the express power to erect the buildings. In the construction of the most naked powers to which the strictest rules of construction are applied, there is no better settled rule than this, that every power necessary to the execution of an express power is plainly implied."

In State ex rel. Wahl v. Speer, 284 Mo. 45, 61, 223 S. W. 655, a statute authorized counties to incur by vote a bonded indebtedness for the purpose of "building court houses," etc. This statute was enacted under the constitutional authority that "for the erection of a court house or jail" the county court could contract a debt in excess of five per cent of its taxable wealth. The court there ruled: "It is

obvious that the words 'for the purpose of building a court house,' etc., in the enabling act, are used as synonymous with the words 'for the erection of a court house,' etc., in the Constitution. The question then is whether these synonymous expressions suffice to empower the electors of a county to authorize a debt for the purpose of an additional site when needed for the erection of a new court house or other public building, or limit the right of the voters to the incurring of a debt merely to erect or build the house. . . . The rule for interpreting statutes, that a power given carries with it, incidentally or by implication, powers not expressed but necessary to render effective the one that is expressed, would require the construction that authority to incur a debt for the erection of a public building, impliedly embraces authority to buy a site for it; and this for the plain reason that without a site the building cannot be erected. [Endlich on Statutes, sec. 418.] . . . In Clarke v. Inhabitants of the Town of Brookfield (81 Mo. 503), this court ruled that a power granted to a municipality 'to prevent and extinguish fires' carried with it, by implication, the power to erect a fire engine house.'' To the same effect is Beauchamp v. Consolidated School District, 297 Mo. 64, 71, 247 S. W. 1004, and Hudgins v. Consolidated School District, 312 Mo. 1, 13, 278 S. W. 769, in which last case the court declared the law to be: ''The rule of interpretation being that a power granted carries with it, incidentally or by implication, powers not expressed, but necessary to render effective the one expressed.''

We may grant that the same rule of interpretation, that a grant of an express power to a municipality to build or erect an improvement carries with it an implied power, when necessary, to purchase or acquire a site on or over which to build or erect the same, applies to the power granted in Section 15 of Article XIV of the Constitution with reference to Turkey Creek Sewer to ''refund assessments heretofore or hereafter collected on account of the same,'' that is the construction of such sewer, and that the city is thereby, by implication, empowered to refund the assessments made in acquiring the right of way for same. But that does not solve the problem here presented. The grant of the implied power does not compel the city to exercise such power or to carry it out to the full. It will be noticed that in the cases cited, where the courts have held that a general grant of power to do a certain thing, as to build a courthouse or make a public improvement, carries with it the implied power to do all that is necessary to accomplish the result, the municipality given such power has in carrying it out expressly included the exercise of the implied power. Thus where a county or school district is given only the implied power to acquire a site for a courthouse or schoolhouse by reason of the express power given to erect such building, such municipality in issuing bonds therefor has expressly included the acquisition of such site, though this also may be

done by necessary implication. The power to include in any bond issue the refunding of assessments collected in acquiring the site or right of way of Turkey Creek Sewer was merely an *implied* power, and it was up to the city in submitting, and the voters in voting the bond issue to include or exclude such item of cost. By not including it, was it not excluded? ██ When it came to submitting the bond issue to the voters, the city carefully submitted the *express* powers given to it by the constitutional amendment, to-wit: "To assume the cost of constructing the Turkey Creek Sewer . . . and pay for the same, and refund assessments heretofore or hereafter collected on account of the same." The city did not submit, as it might have done, and the voters did not vote to exercise or carry out the implied power to pay for or refund the assessments collected on account of purchasing or acquiring the site or right of way of the sewer. Nor was the doing of this necessarily implied. That was a completed and separate transaction accomplished several years previous. This is in accordance with the ruling and reasoning of this court in Meyer v. Kansas City, 323 Mo. 200, 18 S. W. (2d) 900, where bonds were voted for "the construction, improvement and equipment of municipal docks and wharves," but not to acquire a site for same, and it was held that the proceeds of the bond issue could not be used to buy lands along the river on which to construct the same. This court then said: "No such use of the appropriation under the eighth proposition is authorized. The nature of the proposed improvement is not of such a character as to render an express provision for the purchase of the site necessary. While the record is silent on the subject, the inference is permissible that the city possesses or controls the docks and wharves within its corporate limits. . . . Recognizing this fact, it is evident that the framers of the ordinance, and the voters in approving the same understood the plain terms of Proposition Eight contemplated that the appropriation was to be used, not for the acquiring of a site nor for extending the area of same, but to construct, improve and equip the site then possessed or thereafter acquired and controlled by the city. Any other interpretation of the proposition cannot be made without judicial legislation, which would necessitate the interpolation of language to this effect; 'for a site' or 'to procure a site.' The ordinance, No. 55585, in which Proposition Eight appears, contains no grant of power, other than that clearly comprehended within the words employed. There is no room, therefore, for the application of the doctrine of implied powers. This is especially true of a grant of powers to a corporation, municipal or otherwise, and if any doubt arises out of the use of the words employed it is to be resolved in favor of the public and in limiting the expenditures of the appropriation to the express terms for which it was made. [State ex inf. Harvey v. Mo. Athl. Club, 261 Mo. 576, 598, 170 S. W. 904.]" There

is much more reason for a strict construction of the ordinance and bond issue in this case than in that one. [See, also, Horsefall v. School District, 143 Mo. App. 541, 128 S. W. 33.]

 Nor does it seem to have been the intention, if intention is the criterion, as seems to be held in the cases last cited, of the city and its voters that the cost of acquiring the right of way for this sewer should be refunded out of the proceeds of the bonds voted. The city authorities have throughout acted on the theory that only the costs of construction proper would be so paid, and when the money was in hand warrants were promptly issued to pay construction costs, and not right of way costs. Such a warrant was issued to and accepted by relator without question, so far as this record shows. There are evidently many persons to whom warrants should be issued if relator gets its warrant, aggregating $73,000, not counting interest which seems to have been paid on the construction tax bill. Relator practically concedes that there is not a sufficient amount left in the Turkey Creek Bond Fund, after paying the construction assessments with interest and the costs of the bond issue, to pay the amount incurred in acquiring the right of way. In the original petition it was alleged that there was an amount, in this fund sufficient to pay all expenditures for acquiring the right of way. At the trial, evidently to avoid any controverted fact, the relator amended his petition so as to allege only that there was a sufficient amount in this fund to pay relator's demanded warrant. It is asserted in argument, and not denied, that there is not sufficient funds in this account to pay all claims of this character.

Other questions are discussed, but what we have said disposes of the case. As the case rode off on the motion to quash, the equivalent of a demurrer, the facts were not fully developed, but we are satisfied that a trial could not change the result. The judgment will, therefore, be affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.