## Ex Parte HARVEY LEACH.

Springfield Court of Appeals, July 19, 1910.

1. HABEAS CORPUS: Not a Writ of Course. The writ of *habeas corpus* is a writ of right, but it is not a writ of course, and is not to be had for the asking. It is not every question, the proper solution of which would result in the prisoner's discharge, that can be determined in proceeding by *habeas corpus*.

2. ————: Appeal and Error: Constitutional Law. A proceeding by *habeas corpus* cannot be used as a substitute for an appeal or writ of error, although some questions that could be determined on appeal or writ of error, may also be determined in a proceeding by *habeas corpus*. The constitutionality of a law may be determined in a *habeas corpus* proceeding.

3. ————: Local Option Law: Legality of Election. Notwithstanding the statute (section 3581, R. S. 1899), the Supreme Court has held, without mentioning the statute, that one convicted of the violation of the Local Option Law could by *habeas corpus* test the validity of the adoption of said law (Ex parte Lucas, 106 Mo. 218), and this decision is followed in this case.

4. LOCAL OPTION LAW: Notice of Election: Sufficiency of Order Requiring Publication. Where a city council orders the clerk to publish the notice of a local option election, "in some newspaper published in the city" and in pursuance to this order the clerk has the notice published in one of the two newspapers published in the city, and the notice was given general publicity by reason of said publication and the integrity of the election or its result was in no way affected, *held*, that the election was valid and the order of the council in failing to designate the newspaper was a harmless irregularity. But this

holding is held to be in conflict with the case of State v. Gatlin, 128 S. W. 806, decided by the Kansas City Court of Appeals, and because of the conflict this case is transferred to the Supreme Court.

5. ——: **Constitutional Law.** The constitutionality of the Local Option Law has been settled beyond cavil and in prosecutions for its violation the only question open is the question whether this law has been adopted in the territory in which it is alleged the offense is committed, and this question is one of fact to be proven like any other fact in the case.

6. ——: **Criminal Law.** The question whether the Local Option Law has been adopted remains at all times an open question and may be tested at each successive trial of a party charged with its violation, so there is the possibility of the same court holding in one case that the law has been adopted, and in another case that it has not been adopted, according to the testimony in each case.

7. ——: **Legality of Election: Sufficiency of Notice.** When a city council or the county court makes an order of publication in the language of the statute, and in pursuance thereto a notice is "published in some newspaper published in the county," as the statute requires, this should be prima facie good, and before the election could be annulled there should be some showing that the notice had failed of its purpose.

8. **OFFICERS: Presumptions: Local Option Law.** In a *habeas corpus* proceeding where the validity of a local option election was in question, it was held that the presumption would be indulged that the city council and the city clerk acted honestly and did their duty in regard to the publication of the notice of the local option election.

## Original Proceedings by Writ of Habeas Corpus.

PRISONER REMANDED (*and cause certified to Supreme Court*).

*Clay & Davis* for petitioner.

(1) Habeas corpus is a proper remedy in this case. R. S. 1899, sec. 3578; 2 Spelling Extraordinary Relief, secs. 1202, 1205; Ex parte Nee, 157 Mo. 527; In re Flukes, 157 Mo. 125; Ex parte Harrison, 212 Mo. 88; Ex parte Smith, 135 Mo. 223; Ex parte Marmaduke, 91

Mo. 228; Ex parte Swan, 96 Mo. 44; In re Thompson, 117 Mo. 83; Ex parte Arnold, 128 Mo. 256; In re Wooldridge, 30 Mo. App. 612; Ex parte Nielson, 131 U. S. 176, 33 L. Ed. 118. (2) It is a general rule of law governing special elections, or at least it is in this State, that the provisions of the statutes regulating the calling of such elections and the giving of notice thereof must be strictly complied with in order for such elections to be legal. Bean v. County Court, 33 Mo. App. 635; State ex rel. v. Tucker, 32 Mo. App. 620; State v. Kaufman, 45 Mo. App. 656; State v. Kapman, 75 Mo. App. 188; State ex rel. v. Martin, 83 Mo. App. 55; State ex rel. v. Baldwin, 109 Mo. App. 573; State v. Kellogg, 133 Mo. App. 431; State v. Gatlin, 128 S. W. 806, 134 Mo. App. 582. (3) The court's attention is called to the cases of State ex rel. v. Foster, 187 Mo. 590; State v. Binswanger, 122 Mo. App. 78; State v. Kessels, 120 Mo. App. 233; and State ex inf. v. Dabbs, 182 Mo. 359, as authorities for the proposition that the Local Option Law is a special law and that the city council was obligated under section 3029, Revised Statutes 1899, to exercise their discretion and to designate, in the order calling the election, the paper in which the notice should be published. (4) Finally it is argued that the statute requiring the city council to designate the newspaper in which the notice of the calling of the election should be published, is directory; and especially in view of the fact that a large vote was polled, and in view of the fact of the general publicity given by mass meetings, and otherwise, of the calling of the election. This contention is not tenable. Lester v. Miller, 24 So. (Miss.) 193; People v. Board of Canvassers, 66 N. Y. 199; Roper v. Scurlock, 62 S. W. 456; In re Kreiger, 69 N. Y. 851; People v. Town Clerk, 56 N. Y. 64; Ex parte Gublett, 4 S. W. (Tex.) 894; Commonwealth v. McCarthy, 76 S. W. (Ky.) 173; Cress. v. Commonwealth, 37 S. W. (Ky.) 493; State ex rel. v. Martin, 83 Mo. App. 55.

*A. G. Young* and *W. R. Robertson* for respondent.

(1)   Under the proceeding we understand that there is only one question involved and that is whether or not by the failure of the Webb City Council to designate in terms the newspaper in which the local option election notice should be published renders the   election   void. We contend that under the law, the facts and circumstances disclosed by the return that   it did not.   Revised Statutes 1899, sec. 3028; Horsefall v. School District, 128 S. W. 33; State ex rel. v. Ruark, 34 Mo. App. 331; State v Kellogg, 133 Mo. App. 439; State v. Circuit Court, 15 Atl. 272; Seymour v. Takoma, 33 Pac. 1059 (Wash.); Stearns v. State, 100 Pac. 915 (Okla.); Wheat v. Smith, 50 Ark. 276; Foster v. Scorff, 15 Ohio St. 532.

COX, J.—Writ issued, petitioner waived production of his person and the case is here for disposition on the pleadings.

The petitioner alleges that he is confined in the county jail of Jasper county under a warrant issued upon an information filed in the office of the clerk of the circuit court of said county, charging the petitioner with the violation of the Local Option Law within the city of Webb City, which law the information charged had been legally adopted in said city.   Petitioner alleges that his restraint is illegal and unauthorized, because as he alleges, the election by which it is claimed the Local Option Law was adopted in said Webb City, was void, and to show the invalidity of the election sets out the proceedings of the city council of Webb City, together with copies of the petition for the election, notice of the election, canvass of the returns and notice of the result of the election in full.

The grounds upon which the validity of the election is assailed are that the order of the city council directing notice of the election to be given, and the notice given

in pursuance thereto are insufficient.   The order calling
the election provided for giving notice as follows:

"And be it further resolved that the city clerk of
the city of Webb City be ordered to publish notice of
said election in some newspaper published in Webb City
for four consecutive weeks, the last insertion to be made
within ten days before such election."

Petitioner then alleges that the mayor and city
clerk thereafter caused to be published in the *Webb
City Daily Register,* a daily newspaper published within
the corporate limits of said city, the following notice:
(Here follows copy of the notice, but as no point is made
as to its contents we shall not copy it.)

It is alleged that during all the time there was pub-
lished within the corporate limits of said city more than
one newspaper, and that the notice of said election was
published only in the *Webb City Daily Register.*

The return of the sheriff admits that the petitioner
is held under warrant as alleged in the petition and
also avers the calling and holding of the election, and
asserts that the Local Option Law was legally adopted
and by way of specific answer to the charge of alleged
illegality, on account of the notice of election being pub-
lished in but one newspaper in Webb City, avers that
there were but two newspapers published in Webb City,
to-wit, the *Webb City Daily Register,* and the *Webb
City Daily Sentinel.*   That there was at the time in
force a contract between the city of Webb City and the
*Daily Register* by which the city council were bound to
publish all notices of special elections as well as other
legal notices in said paper, and that it was understood
by said city council and said city clerk that unless other-
wise specifically directed, all notices of elections and
other legal matters should be published in  the  *Daily
Register,* and that the *Daily Register* had a larger cir-

149 App—21

culation than the *Daily Sentinel,* the only other paper published in Webb City.

That there were a number of other daily newspapers circulating in Webb City. That a local option election was called in Joplin, Missouri, several days before the election in Webb City.

That said papers contained numerous editorials and articles for and against local option and the fact was repeatedly mentioned that an election would soon be called in Webb City. That on the next day after the calling of the election in Webb City the editorial columns and front pages of all of said papers, under display and large and prominent headlines, contained articles calling attention to the date of said election, and discussing the issues involved. That each faction had a complete and extensive organization with headquarters and offices in Webb City, and that almost daily after the calling of said election, all of said papers contained articles by private citizens and the committees for and against local option, discussing the issues of said election and calling attention to its date. That the *Daily Register* and the other daily paper having the largest circulation in Webb City contained daily editorials and articles setting forth reasons why the voters should cast their ballots for the "Wets."

That a poll of the voters of said city was taken and there was sent to said voters by mail from the respective headquarters, literature with reference to said election, mentioning its date and discussing the issues involved. That both factions posted placards and literature in the store buildings and all available places in Webb City discussing the issues involved in said election, and calling attention to the same and its date.

That after the calling of said election public meetings were held at the various churches and the opera house in said city and the issues discussed by noted speakers. That frequent meetings were held in all the various wards of the city and on the street, and that

street parades were conducted in which banners and various devices were displayed, calling atention to said election. That the city council, by ordinance, fixed the usual voting places as the voting places for said special election, and published notice of said polling places as required by law. That the time and place of holding said election was generally known to all the qualified voters of said city. That at said election a larger vote by about four hundred was cast than at any previous election in said city. That on the day of election all available carriages, automobiles and other conveyances in Webb City, and also from neighboring cities and the surrounding country, were busily engaged in Webb City throughout the day of said election, seeking voters and conveying them to the polling places. That a short time previous to said election in Webb City, the people of Joplin had voted on local option, and Carthage, Carterville and Jasper county outside of said cities were to vote in a few days after said election in Webb City, and that the campaign committees and managers from all parts of Jasper county were present in Webb City on said election day, doing all things possible for the furtherance of their respective causes, and that every qualified voter in Webb City was afforded an opportunity to vote.

Upon this return being filed the petitioner moved for his discharge upon the ground that the facts alleged in the return did not show any legal ground for retaining the prisoner.

The motion for discharge admits the truth of the facts pleaded in the return and the issue is thus sharply defined, and presents for our consideration the question of the legality of the local option election in Webb City.

Preliminary to an examination of the question raised by the pleadings in this case we deem it proper to first determine our own jurisdiction and authority to determine the question in a habeas corpus proceeding.

The writ of habeas corpus is a writ of right, but is not a writ of course, and is not to be had for the asking.

[State ex rel. v. Dobson, 135 Mo. 10, 36 S. W. 238.] And not every question, the proper solution of which would result in the prisoner's discharge can be determined in a proceeding of habeas corpus.

This proceeding cannot be used as a substitute for an appeal or writ of error. [Ex parte Mitchell, 104 Mo. 121, 16 S. W. 118; Ex parte McLaughlin, 210 Mo. 657, 109 S. W. 626; Ex parte Buckley, petitioner, v. Hall, Warden, 215 Mo. 93, 114 S. W. 954.] And yet some questions that could be determined on appeal or writ of error may also be determined in a proceeding by habeas corpus. The constitutionality of the law may be determined in this proceeding. [Ex parte Lucas, 160 Mo. 218, 61 S. W. 218; Ex parte Smith, 135 Mo. 223, 36 S. W. 628; Ex parte Neet, 157 Mo. 527, 57 S. W. 1025.]

But when a law is conceded to be constitutional and the right to retain in custody a prisoner charged with a violation of that law rests upon some fact which is an element of the offense charged, and which fact must be proven by the State to make out a prima facie case against him, or which fact may be proven by the defense and when proven makes a complete defense to the charge entitling the prisoner to a discharge, can that question of fact be passed upon in a habeas corpus proceeding and the court's finding thereon be made the basis of holding or discharging the prisoner?

The constitutionality of the Local Option Law has been settled beyond cavil, and in prosecutions for its violation the only question open is the question whether this law has been adopted in the territory in which it is alleged the offense was committed; and this question is one of fact to be proven like any other fact in the case, and one peculiarity of the law, and the procedure under it, is, that the law may be held in force in one case and a party convicted, and held not in force and a party discharged in another case in the same territory, according to the state of the evidence in each case. There is no way

provided by which the adoption of the Local Option Law
in a county or city may be determined and settled, un-
less the provisions in the Local Option Law for contest-
ing the election is exclusive. A question which we do
not decide, because not raised by the pleadings in this
case; but after an election has been held and the result
published nothing is settled, but the question whether
the law has been adopted remains for all time an open
question, and may be contested at each succeeding trial
of a party charged with its violation *ad infinitum*. So;
we have the possibility of the same court holding in
one case that the law had been adopted, and in another
case that it had not been adopted according to the tes-
timony in each case.

Further, should we hold in this case that the law
had not been adopted and discharge the petitioner, that
decision would bind nobody, and should the same or some
other party be arrested and put upon trial for a like
offense, a conviction might be had, and, should the proof
in that case show that the law had been legally adopted,
and the party convicted should appeal to this court, we
should then be compelled to affirm the judgment in that
case and hold the law legally adopted after having held
in this case that it had not been legally adopted.

It would seem clear to us that this condition should
bring this case squarely within the rule above stated,
that habeas corpus cannot be used as a substitute for
an appeal or writ of error, and we think the following
section of the statute has direct application and should
be given full force, to-wit:

"Statute 1899, Section 3581. *Parties Under Indict-
ment Not to be Discharged Except on Bail.* No person
imprisoned on any indictment found in any court of
competent jurisdiction, or by virtue of any process or
commitment to enforce such indictment, can be dis-
charged under the provisions of this chapter; but if
the offense be bailable, he may be let to bail, and if the
offense be not bailable, he shall be remanded forthwith."

This section as far as it effects this case has been a part of the statute law of this State since 1835, and the Supreme Court has, several times, held that, by reason of this statute a party, held under a warrant issued by a court of competent jurisdiction could not be discharged by habeas corpus proceedings in another court. [Ex parte Ruthven, 17 Mo. 541; In matter of Jim Spradlind, 38 Mo. 547.] And it was expressly held in Ex parte Mitchell, 104 Mo. 121, supra, that a person convicted for violating the Local Option Law could not test the validity of the adoption of that law in a habeas corpus proceeding.

However, in In re Wooldridge, 30 Mo. App. 612, it was held that one convicted of violating this law could by habeas corpus test the validity of its adoption, but made no mention of the statute above quoted, though it was in force at that time. The Wooldridge case was approved by the majority opinion of the Supreme Court in Ex parte Lucas, 160 Mo. 218, l. c. 280, supra, and no mention of the statute made in that case, but as this is the last decision of the Supreme Court on the question we are bound by it, and shall hold that petitioner is properly in court in this case.

Petitioner in this case attacks the order for publication of notice and insists that as the order does not designate the newspaper in which notice was to be published, and there being two papers published in Webb City that the order is void and clothes the clerk with no power to publish notice at all if he should publish it in but one paper, but concedes that if he had published it in both papers the notice would have been legal.

The statute relating to the publication of notice is as follows:

"Section 3029, Revised Statutes 1899. *Notice of Election, How Given.* Notice of such election shall be given by publication in some newspaper published in the county, and such notice shall be published in such newspaper for four consecutive weeks, and the last insertion

shall be within ten days next before such election, and such other notice may be given as the county court or municipal body ordering such election may think proper, in order to given general publicity to the election."

The order of the council followed the language of the statute except that it required publication to be made in some paper published in Webb City instead of permitting it to be made in any paper published in the county. What does this statute mean? Petitioner insists that it means that the county court or city council calling the election must give the notice and cannot delegate that work to the clerk, and, hence, the council, in this case, should have, by order of record, designated the particular newspaper in which notice should be published. The only argument advanced in support of this position is that if the council should entrust the clerk with the duty of selecting the paper he might select an obscure paper that would not give general publicity to the election. We are not impressed with this argument. It assumes that the clerk might act dishonestly, and that he would be more likely to so act than the council, while the law is that every officer is presumed to have done his duty and to have acted in good faith until the contrary be shown. The statute says that "notice shall be given by publication in some newspaper published in the county." We agree that it is the duty of the city council, or other body calling the election, to see that such notice is given, but when such notice is given as a result of the action of the council, it is clear to us that the statute has been substantially complied with, and that is all that is required.

The law presumes that the council acted honestly and did their full duty and in this case it logically follows from this presumption that the council duly considered the question of notice of this election, with a view of giving it general publicity, as the statute requires, and in the absence of proof to the contrary we conclude that after having so considered it, their judg-

ment was that a notice published in any paper published in the city would be sufficient without any further notice and so made the order in that way. The sequel shows that they were entirely right in this conclusion, for there was at once inaugurated a most vigorous campaign by parties interested on both sides of the question. Headquarters were established, literature sent to voters, a poll of the voters taken, public meetings held and the newspapers kept the matter constantly agitated, and as a result a larger vote by four hundred was polled than ever before in the city's history. It is apparent that the fact that an election was called for the purpose of voting on the question of prohibiting the sale of intoxicating liquors in the city of Webb City, was given all the publicity it was possible to give it, and to hold, under such circumstances, that the omission of the council, if it be called an omission, to name the paper in which notice should be published should render the election void, would be so unreasonable that we cannot give it our sanction.

Notice must be published in some newspaper published in the county, for the statute expressly requires this; then, if the council or court think it necessary or expedient to do so, they may order other notice given also. In their action they are to be guided by the declared purpose of the statute, which is, to give the election general publicity. If they only ordered notice to be given by publication in some newspaper, it must be because they did not think any other notice necessary. If they did not name the paper in which the notice was to be published, it must be because they thought notice published in either paper would be sufficient, and if as a result of the order and the notice published in pursuance thereto, general publicity was given the election, as it undoubtedly was in this case, it was sufficient, for nothing more could have been accomplished had the council named the paper itself, instead of leaving that to the clerk. Suppose the council had ordered other notice

given by posting handbills; would it be contended that the order must name the places where these handbills were to be posted? We think not; and there is no more reason for holding that the council must name the newspaper in which to publish notice, than that they should name the place to post notices, should such posting be ordered. These elections can only be held at certain times and are frequently ordered at the meeting of the council, when the petition is presented. The paper selected by the council might, for some reason, refuse to publish the notice, and thereby prevent the election being held at the time selected. The council, in order to prevent such a thing might wisely provide for the notice to be published in any paper printed in the city.

When the council or court makes an order of publication in the language of the statute, and in pursuance thereto a notice is "published in some newspaper published in the county" as the statute requires, this should be prima facie good, and before the election should be annulled and the people required to suffer the inconvenience and incur the expense of another election, there should be some showing that the notice given had failed of its purpose, and, in the absence of such showing, the expressed will of the people should be allowed to stand. The sufficiency of the order for the notice should be judged by the result accomplished, rather than by the form of words used in the order, and the burden of showing that the purpose of the statute was not accomplished, should, in such a case, be upon him who attacks the sufficiency of the order.

The most that can be said against the order of the council in this case is that it was a harmless irregularity, which in no way affected the integrity of the election or its result, and in such cases the election is valid. [Horsefall v. School District, 128 S. W. 33; Sanders v. Lacks, 142 Mo. 255, 43 S. W. 653; State v. Swearingen, 128 Mo. App. 605, l. c. 613, 614, 107 S. W. 1; State ex rel. v. Roberts, 153 Mo. 112, 54 S. W. 520; State ex rel. Walk-

lin v. Shanks et al. (S. Dak.), 125 N. W. 122; Bauer v. Board of Denmark (Mich.), 122 N. W. 121; State ex rel. Little et al. v. Langlin et al. (N. Dak.), 67 N. W. 958; Ex parte Shilling (Texas), 42 S. W. 553; Sneed v. State (Texas), 49 S. W. 595; Norman v. Thompson (Texas), 72 S. W. 62, 64; In re Rowley, 70 N. Y. Sup. 208; Foster v. Scorff, 15 Ohio St. 532, 537; Dishon v. Smith, 10 Iowa 212.]

Our attention has been directed to State ex rel. v. Baldwin, 109 Mo. App. 573, 83 S. W. 266; State v. Kellogg, 153 Mo. App. 431, 113 S. W. 660; State v. Gatlin, 128 S. W. 806, as announcing a different rule.

What was said in the Baldwin case on this question was *obiter* for the decision in that case turned on the power of the county court under the facts in that case to enter an order for notice *nunc pro tunc*. The Kellogg case is in principle in harmony with our views herein, for it was there held that notwithstanding the order did not name the paper in which notice was to be published, yet if the clerk had the notice published in all the papers it was sufficient.

The opinion in the Gatlin case is, we think, in conflict with our holding in this case. In the Gatlin case the form of the order was the same as in this case and the evidence disclosed that there were seven newspapers in the county. The clerk had the notice published in two of them, and the court held in that case that this publication was insufficient, and held the election void without any testimony as to whether the notice given had given general publicity to the election or not.

Our conclusion is that the election in question in this case was valid, and the prisoner should be remanded, and it is so ordered; but, as our holding in this case is in conflict with the decision of the Kansas City Court of Appeals in State v. Gatlin, supra, the case will be certified to the Supreme Court as required by the Constitution. All concur.