## FRANK HUMPHREYS, Respondent, v. WILLIAM HUMPHREYS, Appellant.

### St. Louis Court of Appeals, January 9, 1912.

1. **OFFICERS: Presumption of Right Action.** A presumption of right acting should be indulged in favor of official acts.

2. **ANIMALS: Stock Law: Validity of Election: Publication of Notice.** Where notice of an election under the Stock Law (Laws 1883, p. 26), to determine whether stock should be permitted to run at large in the county, was duly published in a newspaper of the county, the election was not invalid because the order of the county court providing therefor failed to designate the newspaper in which such notice should be published, although three or four newspapers were published in the county.

3. ———: ———: **Election: Proof of Essential Steps: Burden of Proof.** Prima facie proof of the adoption of the Stock Law (Laws 1883, p. 26), at an election in a county, is made by proving the result of the election as spread upon the records of the county court and by proving that publication of the result was made as required by the act; it being for defendant then to show the contrary, by proving that any of the essential steps were not taken.

4. ———: ———: ———: ———: **Sufficiency of Evidence.** In a suit under the Stock Law (Laws 1883, p. 26), evidence *held* sufficient to show that notices of an election to determine whether the law should be adopted in the county were posted at three of the most public places in each township, as required by the act.

5. ———: ———: ———: **Posting Notices: Contradicting Return of Officers: Evidence.** Prior to the Act of 1895 (Laws 1895, p. 40) there being no statute requiring officers posting notices of an election to adopt the Stock Law (Laws 1883, p. 26) to make return thereof, whether such notices were posted as required was a fact to be proved like any other fact, and a return made was not conclusive and could be overcome by oral evidence.

6. **EVIDENCE: Conclusions: Animals: Stock Law.** In a suit under the Stock Law (Laws 1883, p. 26), evidence by the sheriff that he had posted notices of the election to adopt the law in three of the most public places in each township, but that he was unable to state the exact places where he did such posting, was not the statement of a conclusion.

7. **APPELLATE PRACTICE: Theory at Trial: Binding Effect.** A party will not be permitted to adopt a theory on appeal which was instructed out of the case at his instance in the trial court.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*R. H. Norton, Geo. W. Colbert* and *Avery, Young & Woolfolk* for appellant.

(1) There was no sufficient publication of notice of the submission of the stock law election at special election held on September 10, 1887, for the reason that the county court failed to designate what newspaper published in Lincoln county, Missouri, publication of the notice of such special election should be given. R. S. 1909, sec. 780; State ex rel. v. Baldwin, 109 Mo. App. 573; State ex rel. v. Hemmesmeyer, 134 Mo. App. 582; State ex rel. v. Johnson County Court, 138 Mo. App. 427; State v. Gatlin, 143 Mo. App. 605; State v. Kellogg, 133 Mo. App. 431; McPike v. Penn, 51 Mo. 63. (2) The proof as to the date and places of posting such written notices was made by the sheriff in his return on back of copy of notice and is shown by the record to have been taken from a book where he had made memoranda of the places and time of posting them at the time he posted them. The terms and requirements of section 780, aforesaid, relating to the enforcement of the local option statutes relating to the restraining of domestic animals from running at large are mandatory and must be strictly followed.

State v. Gatlin, 143 Mo. App. 605; State ex rel. v. Tucker, 32 Mo. App. 627; State ex rel. v. Bowerman, 40 Mo. App. 576; In re Woolridge, 30 Mo. App. 612; State v. Kampmann, 75 Mo. App. 188; State v. Kaufmann, 45 Mo. App. 659; State v. Dobbins, 116 Mo. App. 29; Otis v. Epperson, 88 Mo. 131; State ex rel. v. Ruark, 34 Mo. App. 331; 23 Cyc., p. 99; Smith v. State, 19 Tex. App. 444; Ex parte Conley, 75 S. W. Rep. 301; Marsden v. Harlocker, 85 Pac. 329; State ex rel. v. Martin, 83 Mo. App. 55; Williams v. Town of Roberts, 88 Ill. 11; Mayes v. Slemmons, 14 Ky. Law 660; In re Layette, 93 N. Y. Supt. 534; In re Smith, 44 Mic. (N. Y.) 338; McKuene v. Weller, 11 Cal. 65; Foster v. Simmons, 40 Miss. 587; Brisbane v. Peabody, 3rd How. P. R. (N. Y.) 109; McPike v. Penn, 51 Mo. 64; 17 Enc. of Pl. and Pr. 99; State ex rel. v. Weeks, 38 Mo. App. 575; Moran v. Daily, 97 Mich. 186; In re Powers, 29 Mich. 508.

*Wm. A Dudley,* for respondent, filed argument.

STATEMENT.—In this suit, which originated before a justice of the peace, the plaintiff seeks to recover damages for injuries to his growing corn said to have been inflicted by the defendant's trespassing horses, cattle and hogs. Upon appeal to the circuit court and a trial there *de novo,* the plaintiff had verdict and judgment for thirty-five dollars and the defendant has appealed. Plaintiff's petition proceeds as in two counts. The first count is based on the statute prohibiting the owner from allowing his domestic animals to run at large. In the second count plaintiff states that he and the defendant owned adjoining farms, having a common enclosure and that defendant wrongfully permitted his horses, hogs and cattle to come upon plaintiff's farm and destroy his growing corn. The defendant, by affidavit, put in issue the fact of the stock law being in force in Lincoln county and denied

that his stock ran at large or trespassed with his permission on plaintiff's corn crop. As to the law being in force in Lincoln county, it is sufficient to say at this point that as to swine, sheep and goats it was put in force by a majority vote at a special election in 1887; and as to horses, mules, asses and cattle it was put in force by a majority vote at the general election in 1894, unless defendant's objections to the sufficiency of the notices of said elections and the promulgation of the results thereof are to be sustained. These objections are noted particularly in the opinion proper.

As to the trespass complained of, plaintiff's evidence tended to show that he and the defendant have adjoining farms which are separated by Sugar Creek as the dividing line. In 1908 the plaintiff had about three acres in corn on his side of the creek. The defendant's stock, consisting of horses, cattle and hogs to a large number, ran at large during that summer and fall, running up and down the creek, and, getting into the plaintiff's corn, destroyed it. The corn field was entirely unfenced. In this respect it was like all other land cultivated in the bottom; none of such land having any fences around it, and there being nothing to prevent stock which was running at large up and down the creek from going upon it. The plaintiff's evidence also tended to prove the amount and value of the crop destroyed.

At the close of plaintiff's evidence, at the instance of the defendant the court instructed the jury to return a verdict finding for defendant on the second count of plaintiff's petition, and said second count was withdrawn from the jury. Thereupon the defendant introduced testimony of various witnesses tending to diminish the estimate to be placed upon the damage plaintiff had suffered and tending to show that it was due to other causes than the trespass committed by defendant's stock. The testimony of these witnesses tended to show that there was a "range" or "com-

mons'' on which stock might run and from it might have access to plaintiff's corn crop. The defendant, himself, in his testimony speaks of the ''commons'' where stock ran, and of stock being ''out on the creek.'' In an attempt to put the blame on the plaintiff he testified: ''Plaintiff's stock run not only at large on the commons there but upon my lands frequently, almost constantly until this suit was brought. Since then his stock has been pretty well kept up.'' On cross-examination he testified: ''As a matter of fact my cattle and hogs and horses did run at large outside my enclosures more or less all during the summer and fall of 1908.'' In rebuttal plaintiff testified that his cattle and horses did not run at large and that he restrained them continually.

CAULFIELD, J. (after stating the facts).—I. The defendant contends that the stock law was never put in force in Lincoln county, because notice of submission of the question of enforcement was not properly given. The stock law in question is the act approved March 27, 1883, entitled ''An Act to restrain domestic animals from running at large.'' [Laws 1883, p. 26.] By its terms the provisions of said act are suspended in the county until a majority of the legal voters voting on the question at a general or special election called for that purpose, decide to enforce the same. The county court is the body empowered to cause the question of enforcement to be submitted, and the law provides that it ''shall cause notice to be given that such vote will be taken, by publishing notice of the same in a newspaper published in such county.'' There is no question in this case but that the notice as to each submission was duly published ''in a newspaper published in such county'' and there is no complaint as to the character or standing of such newspaper or the extent of its circulation, nor is there any question but that a full vote was cast in

each instance; nor can it be said that the county court did not by its order at least attempt to cause such notice to be published "in a newspaper published in such county" as provided in the statute, for as to the 1887 submission its order contained a direction that such notice "be inserted in some newspaper published in the county," and as to the submission of 1894, its order contained a direction that such notice be given by publication "in a newspaper published in the county." But the defendant contends that because such orders failed to designate by name the particular newspaper in which such publication was to be made, there being three or four in the county, the whole proceedings, including the submission and the vote had thereon, were null and void, and without effect to put the stock law in force. The act in question does not itself require that the order shall designate the particular newspaper in which the publication is to be made. Such requirement must be found, if at all, by a process of legal reasoning. We are referred to no decision of our Supreme Court on the subject but there are two decisions, one by the Kansas City Court of Appeals and the other by the Springfield Court of Appeals, which appear to bear on the point in question, and in which the two courts mentioned disagree. These cases are, State v. Gatlin, 143 Mo. App. 605, 128 S. W. 806, and Ex parte Harvey Leach, 149 Mo. App. 317, 130 S. W. 394. They involve the construction of section 3029 of the Revised Statutes 1899, which deals with the notice of an election under the intoxicating liquor Local Option Law and provides that "notice of such election shall be given by publication in some newspaper published in the county" and that "such other notice may be given as the county court or municipal body ordering such election may think proper, in order to give general publicity to the election." In the Gatlin case the county court ordered that the clerk "cause notice of said election to be given by pub-

lication in some newspaper published in Daviess county.'' The record showed that there were seven newspapers published in Daviess county and that the clerk selected two of these and had the notice published in them. The particular point made there was that the county court should select the paper in which publication of notice was to be made and that it could not delegate such authority to the clerk of the court. The Kansas City Court of Appeals held that the point was well taken, and the language of its opinion indicates that it did so, first because in its opinion the peculiar language of the statute before it made it evident that the selection of the medium of publicity was a matter of discretion to be exercised alone by the county court without being delegated; second, because, in its opinion, by the order there in question, the county court did not exercise its discretion, but delegated the exercise of such discretion to its clerk. Both the statute and the order in that case were different from the statute and order before us. But we need not base our decision, or reject the force of that decision, upon any difference in the respective statutes. We may assume that by merely providing for notice and providing that the county court should cause such notice to be given ''by publishing notice of the same in a newspaper published in such county,'' the Legislature intended, where there was more than one newspaper in the county, that the publication be had in in the one which would insure at least as much publicity in the county as could be had by publication in any other, and that the duty of seeing that such publication be had is confided to the county court to be exercised by it in its discretion without being delegated. But in our opinion it does not follow that by ordering, as the county court did in this case, that the notice be published in ''some newspaper published in the county,'' or ''in a newspaper published in the county,'' without more, the county court shirked or avoided

such duty or failed to exercise its discretion, or attempted to delegate its duty and discretion to another. It is just as probable and more consistent with the presumption of right acting, which should be indulged in favor of official acts, that the county court faithfully and properly exercised the discretion given to it by the law and doing so was of the opinion that equal notoriety might be obtained by publication in any of the three or four newspapers published in the county and that therefore it was idle to designate one particularly. In a case like the Gatlin case the Springfield Court of Appeals recently used language which we consider sound and appropriate to this question: "The law presumes that the council acted honestly and did their full duty and in this case it logically follows from this presumption that the council duly considered the question of notice of this election, with a view of giving it general publicity, as the statute requires, and in the absence of proof to the contrary we conclude that after having so considered it, their judgment was that a notice published in any paper published in the city would be sufficient without any further notice and so made the order in that way." [Ex parte Harvey Leach, 149 Mo. App. 317, 327, 328, 130 S. W. 394.] The contention that the notice failed because the county court failed to designate the particular paper in which it was published is overruled.

II. Defendant complains that printed notices of the 1894 election were not posted at three of the most public places in each township as required by the act under consideration. It was not incumbent on plaintiff to prove such posting. He made a prima facie showing that the act had been put in force by proving the result of the election as spread upon the records of the county court and by proving that the publication of the result was made in compliance with the act. It was for defendant then to show the contrary

by proving that any of the essential steps named by
the statute had not been taken. [State v. Searcy, 39
Mo. App. 393; s. c. 111 Mo. 236, 20 S. W. 186.] Now
in this case the county court ordered that the sheriff
of the county do the posting, and plaintiff did not rest
satisfied with having made a prima facie showing as
just mentioned, but went farther and introduced a
"return" by the sheriff which after stating generally
that he had posted three notices in each township un-
dertook to state all such places by name. It developed
in the evidence that as to two of the townships in the
county only two such places were named in the re-
turn. The plaintiff thereupon introduced the sheriff
as a witness and he testified in effect that he and his
deputy had divided the county between them for the
purpose of posting the notices and that in the part of
the county he had undertaken to do the posting in, he
had actually posted notices in at least three of the
most public places in each township, though after a
lapse of some fifteen years he would not undertake to
testify as to the exact places where he posted up such
notices. The deputy was then introduced by the
plaintiff as a witness and he testified that in the part
of the county in which he undertook to do the posting,
he had posted a notice in the three most public places
in each township, but could not after the lapse of fif-
teen years enumerate the different places where he
did such posting. We are of the opinion that even if
the burden of proving the posting was on the plain-
tiff, this was a sufficient showing. Prior to 1895 (Acts
1895, p. 40) there was no statute requiring the officers
posting up the notices to make return thereof. Wheth-
er the notices were posted up in the manner required
by statute was a fact left by it to be proved like any
other fact. [Hayward v. Guilford, 69 Mo. App. 1, 4.]
We need not determine whether the "return" shown
in this case was of any probative force; it is suffi-
cient to say that it was not conclusive. Not being re-

quired or authorized by law, it could be overcome by oral testimony. Now the sheriff and his deputy testified quite positively that they were sure that they had done the posting at three places in each township. Their credibility was for the trial court in this instance and the trial court believed them. And their testimony in this respect was not a "conclusion." It would have been more satisfactory if the witness had been able to state the exact places in each township where they did the posting, but not being able to do so, it was proper for them to give their general recollection.

III. There was substantially the same state of the evidence as to the posting of notices of the result of the 1894 election. The burden of proving this subsequent posting was on the plaintiff (State v. Searcy, supra), but as indicated in the preceding paragraph of this opinion we are of the opinion that the proof was sufficient.

IV. But the defendant asserts that all the testimony concedes that the damages complained of was caused by defendant's stock breaking through a division fence between the adjoining lands of the parties, and states the rule to be that the stock law applied only to outside fences and to stock running at large on the commons and highways and coming upon the premises from the outside, and has no application to the case of adjoining properties. In response to this we need not pass upon the correctness of defendant's statement of the rule, nor ponder carefully the state of the evidence in this respect. By having the division line or adjoining property theory instructed out of the case at the trial, the defendant assumed that there was no evidence to sustain that theory, and he will not be permitted to assume a different attitude on appeal. His stock certainly invaded the plaintiff's land and tram-

162 App.—27

pled and devoured his growing corn. In the nature of things, if the stock did not cross the division line— and defendant is estopped to assert that it did— it must have gotten in across one of the other boundary lines and hence made plaintiff's case under the stock law. This point is ruled against the defendant.

The judgment will be affirmed, but inasmuch as we deem this decision contrary to the decision of the Kansas City Court of Appeals in the Gatlin case, supra, the cause will be certified and transferred to the Supreme Court. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.