L. L. YOWELL ET AL., APPELLANTS, V. JOE MACE, RESPONDENT.*

In the Springfield Court of Appeals. January 7, 1927.

*Corpus Juris-Cyc. References: Animals, 3CJ, p. 174, n. 84; p. 175, n. 97; p. 179, n. 5; Elections, 20CJ, p. 141, n. 77, 79 New; p. 153, n. 56 New; p. 155, n. 72; Evidence, 22CJ, p. 138, n. 12; Injunctions, 32CJ, p. 351, n. 78; Process, 32 Cyc, p. 498, n. 3.

*Farris & Rinehart* for appellants.

*Lorts & Breuer* for respondent.

BAILEY, J.—This is an action instituted in June, 1925, to enjoin defendant, Constable of Spring Creek Township in the county of Phelps, from enforcing or attempting to enforce the law restraining animals from running at large as provided by Article IV of Chapter 27, Revised Statutes 1919. The sufficiency of the petition has not been challenged. A temporary injunction was granted by the judge of the Phelps county circuit court in vacation; on a trial before the Webster county circuit, to which court the cause was transferred on a charge of venue, judgment was for defendant and a permanent injunction denied. Plaintiffs have appealed.

The bill for injunctive relief charges that the election held on November 4, 1924, submitting the proposition of restraining animals from running at large, was invalid and that no valid election had been called or held in Spring Creek Township or in Phelps county. Appellants have challenged the validity of this particular election for the following reasons: (1) That the order calling the election failed to prescribe the kind of ballot to be used at the election; (2) that the return of the sheriff of Phelps county, showing the posting of three notices in three of the most public places in each township, as provided by section 4283, Revised Statutes 1919, is insufficient; (3) that the canvass of the election results was never legally made; (4) that the ballot, prepared and used by the voters at the election, was invalid as a matter of law. In considering these

several points we shall refer to such evidence as seems pertinent to the questions at issue.

1. The order of the county court of Phelps county submitting the proposition of restraining animals from running at large at the general election held November 4, 1924, was made in pursuance of the provisions of section 4283, Revised Statutes 1919. The sufficiency of the order is challenged only because it failed to provide or incorporate therein the form of ballot to be used. The statute no where makes it the duty of the county court to prescribe the form of ballot. On the contrary a form of ballot to be used in stock-law elections is set out in section 4284, and the duty of preparing the ballots and causing them to be delivered to the judges of election is imposed on the county clerk under the provisions of Article VI, Chapter 30, of our general election laws, applicable to stock-law elections. It is, therefore, no part of the duty of the county court to prescribe the form of ballot in its order calling the election. The ballot to be used at the election must be prepared by the county clerk as a ministerial duty and the form of ballot constitutes no part of the record required to be made by the county court. [State ex rel. Brines et al. v. Franklin et al., 283 S. W. 712, 1. c. 714.] The order of the county court calling the election was therefore sufficient.

(2) Section 4287, Revised Statutes 1919, relates to the mode and manner of giving notice of the election and, after providing for publication of notice in a newspaper published in the county, further provides as follows: "And by posting notices thereof at three of the most public places in each township in such county, at least twenty days before said election, etc.," section 4287 makes it the duty of the sheriff to post the notices and further provides, "And the returns of the sheriff posting said notices, together with the proof of publication of the notices required to be published by this article, shall be recorded by the county clerk of the county in which any such election shall be held, and shall be taken and received by all courts of this State as prima-facie evidence of the posting and publication of said notices."

The return made by the sheriff and duly recorded is in words and figures as follows: "State of Missouri, County of Phelps, ss. James Warren, Sheriff, being duly sworn, certifies and says on his oath that at the county of Phelps and State of Missouri, on the 4th day of October, 1924, that he posted and put up in *at least three separate and most public places* true original duplicate copies of the foregoing notices in the following municipal townships of Phelps county, to-wit: Arlington, Dillon, Cold Springs, Dawson, Liberty, Miller, Meramec, Rolla, St. James and Spring Creek being more than twenty days before the general election to-wit: No. 4, 1924.

"Witness my hand and signature this 4th day of October, 1924.

"JAMES WARREN,

"Sheriff of Phelps Co., Mo."

(Italics ours.)

Plaintiffs question the sufficiency of the shriff's return as to post-ing of the statutory notices in that the return simply recites that the sheriff posted such notices in three of the most public places in each township without designating or describing therein the particular places; that the return merely states the sheriff's own opinion or conclusion that the places in which notices were published were the three most public places in the township; that his return should have recited facts from which the county court, and the public generally, could be advised and informed whether the places were, in fact, the most public places; that the return, in effect, was similar to a void service of process or publication and conferred upon the court no jurisdiction to hold the election on November 4, 1924. We are un-able to agree with these contentions. The sheriff's return followed the exact wording of the statute (sec. 4283.) The recitation therein that he posted the notices at three of the most public places in each township of the county (naming them) must be taken as prima-facie evidence of such posting (sec. 4287). The statute prescribes no form of return and prior to 1895, no return whatever was required of an officer posting the notices, but proof thereof could be made by parol testimony as of any other fact. [Humphreys v. Humphreys, 162 Mo. App. 408, l. c. 416, 142 S. W. 757; Haywood v. Guilford, 69 Mo. App. 14.]

It is true, as urged by plaintiffs, that in a civil suit the return of the officer executing a summons must show therein a strict compliance with the statute and unless the return, on its face, does so show, the service is insufficient. [Taylor v. Helter, 198 Mo. App. 643, 201 S. W. 618.] But in such cases the matters which the return of the of-ficer must show are specifically prescribed by statute. We have no such situation here. A reasonable compliance with the provisions of the law would seem to be sufficient and, in the absence of proof to the contrary, we are of the opinion that a return which follows the language of the statute does indicate on its face that the re-quirements of the law have been fulfilled. It is also apparent that had the return of the sheriff described the three places in each town-ship where he posted the notices, yet that would not necessarily in-dicate that such places were, in fact, the most public places. It is true that in certain townships, where might be located post offices or a court house, the designation of such places would be an indication that they were most public. In other townships, however, where there might perhaps be no post office and no outstanding public place save a school house or cross-road, the matter could only be

determined by evidence such as was used in the Humphreys case or the Hayward case (supra). Moreover, the very fact that the statute does not require the county court to designate the places in each township where such notices shall be posted but leaves the matter to the discretion of the sheriff, indicates that it is not a matter to be passed upon by the county court. If the sheriff's return shows that he did post the notices as required by law, even though such return may be in general terms, as here, the return is prima-facie evidence of proper posting of the notices and in the absence of proof to the contrary, such return should be so received by the courts.

In the Humphreys case (supra), which was a stock-law case, although the statute then under consideration did not require the sheriff to make a return, he did, nevertheless, make a return. This return, after stating generally that he had posted three notices in each township, undertook to state all such places by name. The so-called return, however, named but two such places in two of the townships. The sheriff and his deputy testified that they were certain they had done the posting in three of the most public places in each township, but were unable to state or enumerate the exact places where they had posted notices fifteen years prior thereto. The St. Louis Court of Appeals held that "their testimony in this respect was not a 'conclusion.'" So in this case, the return of the sheriff which follows the exact wording of the statute should not be construed as his conclusion that the places where the notices were posted were three of the most public places in each township. To our minds such return is no more a conclusion than the return made by a sheriff in a civil suit that he has served a summons on defendant by leaving a copy of the writ together with a certified copy of the original petition at his usual place of abode with some member of his family over fifteen years of age. It might be said the return of the sheriff that he left the papers at the usual place of abode of defendant, without indicating where that place might be, is the sheriff's conclusion. Such return, however, is held to be sufficient. If it substantially follows the language of the statute, that is all the law requires. [Colter v. Luke, 129 Mo. App. 702, 108 S. W. 608.] So in the case at bar, the return on its face shows a compliance with the law and must be taken as prima-facie evidence of the posting of the notices and in the absence of any affirmative proof that the notices were not posted as required by law, the sheriff's return should be taken as correct.

It is also a significant fact that the vote was a reasonably full vote on the question and in the township of Spring Creek, where plaintiffs reside, the vote on the stock-law election was practically the full vote cast for presidential electors and was almost unanimously against the proposition. We believe the reasoning in the Hayword

case (supra) is applicable here on the weight to be given the vote itself on the question of notice. This point is ruled against plaintiffs.

We shall next consider the question of the alleged illegality in the canvass of the vote.

(3) The record of the canvass of the election, in so far as material, is as follows: "Now again comes P. C. Glover and Anvil Heavin, two of the judges of the county court selected to canvass the election returns according to law, and the proposition for enforcing the law restraining horses, mules, asses, cattle, goats, swine and sheep from running at large in Phelps county, Missouri, and finds: For enforcing the law restraining horses, mules, asses, cattle, goats, swine and sheep from running at large: Yes. 1755 votes: No. 1505."

The notice of the result of the election as placed of record contains the following: "The returns of said election were regularly canvassed by Hon. P. C. Glover and Anvil Heavin, two judges of the county court, and W. L. Bradford, clerk of the county court, and said proposition being on aforesaid date submitted and voted upon by the legal and qualified voters of Phelps county, was carried by the following vote, to-wit: etc."

Section 4881, Revised Statutes 1919, provides that the clerk of the county, shall take to his assistance, two justices of the peace or two judges of the county court, and cast up the votes. It is contended by plaintiffs that the record of the canvass of the vote above set forth fails to show the county clerk was a member of the canvassing board as required by law. The statute nowhere requires that the certificate which the clerk makes of the result of an election be spread upon the record in any particular manner. The presumption is that the law was complied with, and while the record of the canvass of election fails to state in so many words that the clerk helped canvass the election, it is a fair presumption that the clerk who chose the other members of the canvassing board was present. Moreover, we believe the record made of the posting of the notices was as much a part of the record required to be made by the county clerk as the record of the canvass of the vote. From that record it affirmatively appears that the clerk was a member of the canvassing board. Plaintiffs rely on State v. Mackin, 41 Mo. App. 99, and State v. Prather, 41 Mo. App. 451, as holding that the record in this case is insufficient to show a valid canvass of the election. These cases were overruled in the case of State v. Searcy, 111 Mo. 236, and are no longer authorities on the question at issue. We are convinced the record of the canvass of the election and notice of the result thereof made a prima-facie case for defendant, in so far as the question of the proper canvass of the vote is concerned.

Plaintiff further contends that the form of ballot used for the stock-law election invalidated the election. The stock-law election was held on the same day as the general election. Instead of a separate ballot, however, there was printed at the foot of each of the seven party tickets appearing on the Australian Ballot used, the following, to-wit:

"☐ For enforcing the law restraining horses and mules, asses, cattle, goats, swine and sheep from running at large. Yes.".

"☐ For enforcing the law restraining horses and mules, asses, cattle, goats, swine and sheep from running at large. No."

In other words, this form of ballot for the stock-law election appeared seven times on the ballot, once at the bottom of each party ticket. No words of direction or explanation as to how the ballot should be voted appeared thereon. It is contended that this form of ballot was confusing to the voter and not in accordance with section 4284, Revised Statutes 1919, which provides a form of ballot to be used at stock-law elections in language as follows: "There shall be written or printed on each ballot voted at said election either of the following sentences: 'For enforcing the law restraining (insert the name of animals in petition) from running at large:' 'against enforcing the law restraining (insert the name of animals in petition) from running at large.' " This statute evidently contemplates that the voter shall be provided with two stock-law ballots, one for and the other against adoption of the law, and that such voter shall use the ballot he desires to vote, the other to be placed in the box of rejected ballots or destroyed. The statute is, however, somewhat ambiguous and is capable of the interpretation apparently placed upon it by the county clerk when he provided only one form using the words heretofore set out. The statute nowhere prescribes what shall be the result of failure to use the form of ballot provided therein. That being the situation the failure of the county clerk to provide a ballot identical in form with the statutory ballot would not necessarily invalidate the election. The present rule in this State indicates a liberal attitude on such questions and is thus stated, "Where a statute provides specifically that a ballot not in a prescribed form shall not be counted, the statute is mandatory and must be enforced; but where it merely provides that certain ballots shall be used, and does not prescribe what results shall follow if they are not used, the statute is directory, and the test as to the legality of the ballot is whether or not the voters were afforded an opportunity to express, and that they did fairly express their will." [State ex rel. Memphis v. Hackman, 202 S. W. 14, 273 Mo. 670.]

In another case where an irregular ballot was used in an election on township organization, the following test was promulgated: "If it appears that no substantial right depends upon a compliance with

the statutory requirement and no injury can result from ignoring it, and the other purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same result obtained, then the statute will be regarded as directory; but if not so, it will be mandatory.''

To the same effect are State ex rel. Barrett v. Imhoff, 291 Mo. 1. c. 621, 238 S. W. 122; Nance v. Kearby, 251 Mo. 374, 158 S. W. 629; Applegate v. Eagan, 74 Mo. 258, and other cases. From these authorities it is quite clear that the statute here involved is directory merely and unless the ballot be in such form as to prevent a free expression of the voter's will, it should not be cause for holding the election invalid. Under the facts with which we are confronted there is no reason to believe the voter could have been misled or confused by the ballot used. The fact that the ballot provided a square before each proposition to be voted upon was not unusual and it was a method of voting with which each voter, in Missouri, may be presumed to be familiar since it is used almost uniformly, under our law, when voting upon candidates or upon propositions submitted to the voter. While the voter might also cross out the proposition he did not desire to vote, which the evidence shows was done, that should not invalidate the ballot under the rule that if the will of the voter can be determined from his ballot, and no law is infracted, the ballot should be counted. [Right v. Marquis, 255 S. W. 637.] Some weight may also be given to the fact that in the township where one of plaintiffs resided, composed of Edgar Springs and Yancy voting precincts, there was a total vote for presidential electors 367. The vote in the precincts was 21 for and 332 against the stock law. It certainly cannot be said there was any misunderstanding or confusion in the minds of the voters in that township. The total vote in the county was 1755 for and 1505 against out of a total vote for presidential electors amounting to 5500. This indicates 1240 who voted at the election failed to vote on the stock-law proposition. The large portion of those who failed to vote on the proposition resided in the cities or Rolla and St. James where, it may be presumed, the voters were not particularly interested in the outcome of the stock-law election. There is no charge of fraud or mistake and no evidence in this case to indicate the voter was confused or misled by the ballot used. We are, therefore, of the opinion that the election was valid and the judgment should be affirmed. It is so ordered.

Cox, P. J., and Bradley, J., concur.